DRAINAGE DIST. No. 4, MADISON COUNTY, *v.* A. H.
ASKEW *et al.*

*(Jackson.* April Term, 1918.)

1. **JURY. Right to jury trial. Drainage proceedings.**

On application to establish drainage district under Acts 1909,
chapter 185, giving right to jury trial on appeal to circuit court
according to the law of the land, property owners are entitled
to a jury trial as to advisability, property, and feasibility of
establishing district and of including certain lands; such ques-
tions being purely of legal cognizance. (*Post, pp.* 322, 323.)

2. **CONSTITUTIONAL LAW. Judicial power. Wisdom of legisla-
tion.**

That construction of drainage act (Acts 1909, chapter 185) to
award jury trial might render the act useless does not concern
the court if the constitutional right to jury trial exists; the
feasibility of the act being for the legislature. (*Post, p.* 323.)

Cases cited and approved: Trigally v. Memphis, 46 Tenn., 382;
State ex rel. v. King, 137 Tenn., 17; Neely v. State, 63 Tenn.,
180; McGinnis v. State, 28 Tenn., 43.

3. **EVIDENCE. Opinion evidence. Nonexperts.**

In proceeding to establish drainage district, questions as to land
topography may be proved by the evidence of laymen. (*Post. pp.*
323, 324.)

4. **EVIDENCE. Nonexpert testimony.**

Rapidly of water flow may be shown by laymen. (*Post, pp.* 323,
324.)

5. **EVIDENCE. Nonexpert testimony.**

The value of land before and after drainage can be proved by
the testimony of nonexpert witnesses. (*Post, p.* 323, 324.)

6. **EVIDENCE. Nonexpert testimony.**

Proportionate assessment and damages arising to land from the
establishment of a drain can be shown by the testimony of lay-
men. (*Post, pp.* 323, 324.)

7. **EVIDENCE. Expert testimony. Capacity of canal.**
In proceeding to establish drainage district testimony of laymen as to capacity of the canal for removing accumulated water is incompetent. (*Post, pp.* 324, 325.)

8. **DRAINS. Establishment of drainage districts. Matters material.**
Where after main drain is built property owners, in order to drain their lands, must build private laterals, cost of such laterals could not be considered in determining propriety of establishing drainage district, which depends primarily on consideration of public health and welfare. (*Post, pp.* 325, 326.)

9. **DRAINS. Drainage districts. Establishment. Time to claim damages.**
In drainage proceedings under Acts 1909, chapter 185, section 5 of which requires claim for damages to be filed five days before the hearing, and section 4 requires five days' notice, a claim is barred unless filed five days before the hearing, but in the absence of notice the claimant is entitled to five days in which to file. (*Post, pp.* 326, 327.)

10. **DRAINS. Establishment of drainage districts. Appeal. Scope.**
Property owners in proceeding to establish drainage district being entitled to jury trial, the court on appeal cannot determine the advisabiltiy of establishing the district. (*Post, p.* 327.)

---

FROM MADISON.

---

Appeal from the Circuit Court of Madison County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— Hon. S. J. Everett, Judge.

L. L. Fonville and W. H. Biggs, for plaintiff.

C. E. Pigford, for defendants.

Mr. Justice Lansden delivered the opinion of the Court.

This is an application to the county court to establish a drainage district in Madison county, under chapter 185, Acts 1909. There is no objection to the form or substance of the petition. The county court approved the petition, and appointed an engineer as required by the act, who made his report in accord therewith, which was adopted by the court. Process issued upon the petition, and witnesses were examined after answer filed, and the county court, after a full hearing, decreed that the drainage district should be established. Certain landowners within the jurisdiction of the district appealed to the circuit court, and in that court, after a full hearing of the evidence, the action of the county court was reversed, and the petition. was dismissed. An appeal was taken to the court of civil appeals, and in that court the action of the circuit court was affirmed. The case is before us upon petition for *certiorari*, and a number of errors have been assigned to the action of the court of civil appeals.

One error assigned is upon the holding of that court to the effect that the action of the circuit court must be sustained by the court of civil appeals if there was any evidence to support its judgment. The court of civil appeals held that the defendants to the petition were entitled to a jury upon proper demand, which was made in the answer, and therefore it held

that the findings of fact by the circuit court were binding upon it, if there was evidence to support the finding.  This action of the court of civil appeals is assigned as error, and it therefore becomes necessary for us to construe certain portions of the act under consideration.

The act vests the county court with jurisdiction, power, and authority to establish a drainage district as provided therein, upon petition by one or more persons owning land that will be affected by or liable to be assessed for the expenses of the proposed improvement.  This petition shall set forth the body of the land, describing it by metes and bounds so as to convey an intelligible description of the land.  The petition must also show that the land described is subject to overflow or too wet for profitable cultivation, and that the public health or welfare will be promoted by draining it, if a drainage district is sought, and setting forth as near as may be possible the starting point, route, and *terminus,* and lateral branches, if any, and a bond is to be filed with the petition with good security in such penal sum as the county clerk may require, to be approved by him, conditioned for the payment of all preliminary expenses, and also costs and expenses incurred in the proceedings in case the county court does not grant the prayer of the petition or the petition is dismissed for any cause.

After this petition is filed, and the bond taken and approved, the county court at its first session shall

appoint a disinterested and competent engineer, and
have placed a copy of the petition in his hands, and
he shall proceed to examine the lands described in
the petition, and any other lands that would be
benefitted by the improvements, or that is necessary
in carrying out the improvement, and survey and
locate the drain or drains, ditch or ditches, levee
or levees, improvement or improvements, as may be
practicable to carry out the purposes of the petition,
and which shall be a public benefit or utility or con-
ducive to the public health or welfare. He shall make
due return of his report to the county court clerk,
and shall set forth therein the starting point, the
route, the *terminus* or *terminii* of the ditch or ditches,
drain or drains, levee or levees, or other improve-
ments, together with a plat and profile showing the
same, and the course and length through each tract
of land as far as may be practicable and the total
length, and the course and elevation of all lakes,
ponds, and deep impressions in the district and the
fall obtainable across the district, and the boundary
of the proposed district, and a description of each
tract of land contained therein, as shown by the tax
books, and the names of the owners thereof as shown
by the tax books, together with the probable costs
of the improvement, and such other facts and recom-
mendations as he may deem material.

This report is not binding upon the county court,
but it may at any time recall the appointment of the
engineer first appointed, if deemed advisable, and

appoint another to act in his place; however, if the county court is satisfied with the report of the engineer, it may approve the proposed district without further evidence than the report of the engineer, but if it disapproves the project, as shown by the report of the engineer, it need not proceed further. If the court concludes to proceed further, it shall order the clerk to cause notice to be given to each landowner not petitioner and who is resident of the State, by the service of writs to be issued upon the petition, and of publication to each nonresident landowner. If it is made to appear to the court that landowners are included within the proposed district whose names do not appear upon the tax books of the county, such landowners must be included within the writ or summons.

Damages may be claimed on account of the proposed district by any person who conceives himself to be injured thereby, by filing such claim in the office of the county clerk at least five days prior to the day on which the petition has been set for hearing. If any such claimant shall fail to file a claim at the time specified, he shall be held to have waived his rights thereto, except that infants, persons *non compos mentis* without regular guardian, or if with regular guardian and the guardian has not been notified of the proceeding as above described, and these facts are made to appear to the court by affidavit, the court shall appoint a guardian *ad litem*

for such person who shall have five days after his appointment in which to file claims for damages.

The county court shall hear evidence after summons has issued, answers have been filed, and the case set for hearing, upon the advisability of establishing the district. This hearing shall involve a determination of the sufficiency of the petition in "form and manner" (substance), and which may be amended at any time before final action thereon, both as to "form and substance." The determination of the sufficiency of the petition in form and substance is not wholly a question of law. This hearing, as it affects the petition, may involve the description of the land proposed to be embraced in the district. It is only such lands as are subject to overflow or too wet for profitable cultivation, or are necessary in carrying out the improvement, and that the public health or welfare will be promoted by "draining, ditching, or leveeing" and the like, as may be embraced within the district and taxed with the expense of its creation. If, therefore, the proof should show that the description contained in the petition embraces lands which would not be so benefitted by the proposed drain or ditch, it would be proper for the county court to take this matter into consideration in determining whether the district should be created.

The court must also find that such drainage would be for the public benefit or utility and conducive to the public health and welfare before it can adjudge the necessity therefor. If such appears to the satis-

Drainage Dist. No. 4 v. Askew.

faction of the court, it shall adjudge that the proposed district be established. This is said upon the assumption that no claims for damages are filed against it within the time prescribed by the act. However, if such claims for damages are filed, the court shall not establish said district until viewers have been appointed and have reported.

The procedure with respect to the viewers is set out in detail by the act. When the viewers shall have reported, the court is required to consider the amount of damages awarded by them in deciding whether the district shall be established, and if, in its judgment, the probable cost of the construction is not a greater burden than should be properly borne by the land benefitted by the improvement, and the improvement is conducive to the public health or welfare, and the public benefit and utility, the court shall then locate and establish such drainage district by final order or judgment.

In such event the court is to determine the amount of damages sustained by each claimant, and in so doing must hear evidence in regard thereto, and increase or diminish the amount awarded by the viewers as may seem just and right.

Any party aggrieved may appeal from the decision of the court in establishing, or refusing to establish, the district, or its decision in the allowance of damages, to the circuit court. In the circuit court the appeal is heard *de novo,* and in case the appeal is from the action of the county court in establishing

or refusing to establish the drainage district, the circuit court shall enter such order as it may deem just and proper in the premises. This hearing in the circuit court is upon evidence adduced by each party, "and the trial in that court shall be with or without a jury as the court may deem the right of the parties to be under the particular issues to be tried, the right to a jury being accorded wherever the parties have such right under the law of the land.''

Considering the digest of the Drainage Act set out above, we think it indisputable that the defendants were entitled to a jury. There are many facts to be adjudged in determining whether it is proper to establish the drainage district which are triable by jury. The nature of the land included in the boundaries of the district laid off by the engineer, whether such land would be benefitted by the establishment of the district, and therefore whether it should be included within the district and subjected to the assessments provided by the act, the topography of the land, the nature of the watershed included in the district, the rapidity with which the water flows off of the land into the bottoms to be drained, the public welfare and public utility, the value of the land before and after drainage, the amount of assessment which each tract should bear in the establishment of the district, the amount of the damages which each claimant would sustain by the establishment of the district, are all questions triable by jury at common law; therefore either party is entitled to have a jury to determine

the foregoing questions, all of. which are involved in a consideration of the petition.

.It is said for petitioners that these questions are equitable in their nature, and for this reason are not triable by jury. We do not think this contention is tenable. The questions are not equitable. They are purely of legal cognizance. It is also said that this construction renders the act useless. However this may be, we cannot be governed by such questions, but must determine the question of law involved apart from the question of the feasibility of the act. Those are questions for the legislature, and not for the court. The court must say, under the Constitution, whether the parties are entitled to a trial by a jury, and if this question is determined in the affirmative the court must award the right. *Trigally* v. *Memphis,* 6 Cold., 382; *State ex rel.* v. *King,* 137 Tenn., 17, 191 S. W., 352; *Neely* v. *State,* 4 Baxt., 180; *McGinnis* v. *State,* 9 Humph., 43, 49 Am. Dec., 697.

The issues just stated can be proven by the evidence of laymen. It does not require expert testimony to describe a tract of land, a watershed, or to say whether a given parcel of land is too wet for profitable cultivation and will be benefitted by a drain or ditch. Whether the improvement district will be to the public welfare or public utility, is dependent upon questions which may well be determined by the evidence of laymen, and therefore the layman is competent to give his opinion upon the ultimate fact to be determined. This is true as to the sanity or insanity of .

a testator, in which case the layman is permitted to state the facts and give his opinion. The fact that he is a layman, and expresses an opinion after stating the facts, goes to the weight of his testimony rather than its admissibility.

We think, however, that testimony of lay witnesses as to the capacity of the drainage canal for removing the accumulated water from the surface of the drainage district was not competent. Such conditions are matters of expert mathematical calculation, and from experience and observation the dimensions of a canal required to profitably drain a given area under given conditions has been reduced to a mathematical formula from which experts can determine the proper dimensions and grade of the drainage canal. We think that it was the intention of the legislature that the sufficiency of the canal to drain the district should be determined upon the evidence of drainage engineers alone. This is shown from the requirement of the act that the county court shall first determine the advisability of establishing the district from the report of the engineer or engineers alone. The court is required, upon the filing of the petition, to appoint a competent and disinterested engineer, from whose report the court determines the advisability of establishing the improvement district before evidence upon the question is heard. There is no provision anywhere in the act for hearing any other testimony than that of the engineer or engineers upon the dimensions, grade, and length of the drainage canal. It was not

only the intention of the legislature, clearly inferable from the provisions with respect to the duties of the engineer, but the very nature of the testimony requires expert information in order to correctly determine the facts. Hence we are of opinion that testimony of laymen as to the capacity of the canal to remove the water from the drainage district is not competent.

It is shown in the proof that after the drainage canal has been constructed it will be necessary for adjacent landowners to construct laterals in order to conduct the water from the land to the main canal. A question is presented as to whether or not the expense of constructing these laterals should be taken into consideration in-determining the propriety or impropriety of establishing the drainage district. The circuit court and the court of civil appeals held that it should. We think this was error. While the rendition of wet land suitable to profitable cultivation is one of the objects of the legislature in passing the act under consideration, it is not the only one. Such is not the only consideration of the court in determining whether the district shall be established, although it is a material consideration; and if the expense which the land shall bear by assessment after the construction of the drain is too large in proportion to its value, the district should not be established. Still the public welfare, the public health, and the public utility are likewise to be considered in determining the advisability of establishing the district. The public wel-

fare, benefit, and utility could not be affected by the laterals which adjacent landowners are to construct upon their land. After the main canal is constructed, it would still be discretionary with the adjacent landowner whether he built laterals connecting with the main canal or not. There is nothing in the act making it compulsory for them to do so, if indeed there could be. Hence those features to be served by the construction of the main canal are not dependent alone upon the construction of the laterals, and for these reasons we do not think the expense of the laterals should be taken into consideration in determining the advisability of establishing the district.

As to the time in which claims for damages must be filed, section 5 of the act provides that any person claiming damages on account of the construction of the improvement "shall file such claim in the office of the county clerk at least five days prior to the day on which the petition has been set for hearing." It is provided in section 4 that, if at the time first set for hearing it shall appear to the court that any person entitled to notice has not had such notice, the hearing shall be adjourned until such person can be given the required notice. Whether a claimant for damages is barred by the act would be determined by the fact as to the time at which he received notice of the hearing. He must file his claim at least five days prior to the day on which the petition has been set for hearing; but if he has not received notice and is entitled to notice as much as five days before that

Drainage Dist. No. 4 v. Askew.

time, he would not be barred, if he did not file his claim within the five days. This, of course, would be true, unless he had voluntarily entered his appearance and had waived the formality of notice; in such case the five days would run from the date in which he had entered his appearance. This is said without reference to the rights of infants and persons *non compos.*

We cannot determine the advisability of establishing the district, because defendants are entitled to a jury. The finding of the circuit court is binding upon us if there is any evidence to support its action, and there is such evidence in this record, but that court proceeded upon an erroneous idea of the questions which should govern it in establishing or refusing to establish the district. This makes it necessary for us to reverse and remand the case for a new trial, which is accordingly done.