OBION COUNTY FOR USE OF HOUSER CREEK DRAINAGE DIST.,
*v.* COULTER *et al.* (No. 1)*

### (*Jackson.* April Term, 1926.)

1. **DRAINS.** Landowner, failing to object to county judge's disqualifi-
cation at hearing of proceeding to establish drainage district, cannot
thereafter raise the point.

    Landowner, who failed to make objection to disqualification of coun-
ty judge at hearing of proceeding to establish drainage district can-
not thereafter assert disqualification. (*Post, p.* 480.)

2. **JUDGES.** Judge's disqualification because of interest, relationship,
having been of counsel, or having presided in inferior court, is
waived in civil cases by failure to make objection in limine on the
hearing (Constitution, article 6, section 11; Shannon's Annotated
Code, section 5706).

    The incompetency of a judge, under Constitution, article 6, section 11,
and Shannon's Annotated Code, Section 5706, because of his in-
terest, relationship, having been of counsel, or having presided in in-
ferior court, is waived in civil cases by failure to make objection *in
limine* on the hearing, and parties are conclusively presumed to
have consented to his presiding at trial. (*Post, p.* 480.)

    Acts cited and construed: Acts 1909, ch. 185; Acts 1915, ch. 63, sec. 5.

    Cases cited and approved: Wroe v. Greer, 32 Tenn., 172; Crozier v.

---

*On discretionary power to prescribe the mode of apportionment of
assessment for local improvement, see note in 28 L. R. A. (N. S.) 1158.

(469)

Goodwin, 69 Tenn., 125; Hilton v. Miller, 73 Tenn., 395; Holmes v. Eason, 76 Tenn., 754; Posey v. Eaton, 77 Tenn., 500; Hume v. Bank, 78 Tenn., 6; Nashville v. Thompson, 80 Tenn., 344; Trust Co. v. Lumber Co., 92 Tenn., 126; Grundy County v. Coal Co., 94 Tenn., 325; In re Cameron, 126 Tenn. 662.

Code cited and construed: Sec. 5706 (S.).

Constitution cited and construed: Art. 6, sec. 11.

3. DRAINS. Act, providing for organization of drainage districts, held not to provide for additional compensation to county judge, and hence not unconstitutional as authorizing judge having interest in establishment of district to act (Pub. Acts 1909, chapter 185, section 36, as amended by Pub. Acts 1915, chapter 63, section 5; Constitution, article 6, section 11).

Pub. Acts 1909, chapter 185, section 36, as amended by Pub. Acts 1915, chapter 63, section 5, providing for organization of drainage districts, and providing that county judge and others selected by him shall constitute board of directors, and that directors shall receive a certain compensation, does not provide for additional compensation for the county judge, and hence act is not violative of Constitution, article 6, section 11, as providing for proceedings before interested judge. (*Post, pp.* 480-481.)

4. CONSTITUTIONAL LAW.

Every presumption is always in favor of constitutionality of an act. (*Post, p.* 481.)

Case cited and approved: State v. Woolen, 128 Tenn., 456.

5. CONSTITUTIONAL LAW.

Statute will be so construed that it may be held constitutional, if it can reasonably. (*Post, p.* 481.)

Cases cited and approved: Jones v. Coal Creek Min., etc., Co., 133 Tenn., 159; State v. White, 132 Tenn., 203.

6. CONSTITUTIONAL LAW. Doubts resolve in favor of constitutionality of statute passed in due form.

All doubts will be resolved in favor of constitutionality of statute passed in due form, and that interpretation given it which will support its constitutionality. (*Post, p.* 481.)

Cases cited and approved: Palmer v. Southern Exp. Co., 129 Tenn., 116; Heiskell v. Knoxville, 136 Tenn., 376; State v. Freels, 136 Tenn., 483; Railroad v. Harris, 99 Tenn., 684.

7. **CONSTITUTIONAL LAW.** Valid construction of statute adopted in preference to void construction, though latter is more natural interpretation at first view.

Where one construction of statute will render it void and another valid, latter will be adopted, though former, at first view, is more natural interpretation of words used. (*Post, pp.* 481-482.)

Case cited and approved: Riggins v. Tyler, 134 Tenn., 577.

8. **CONSTITUTIONAL LAW.** Landowner, not present, and doing nothing toward establishment of drainage district, held not estopped, by payment of first assessments, from attacking validity of drainage act (Pub. Acts 1909, chapter 185).

Where landowner at no time appeared at any stage of proceedings to establish drainage district and took no steps looking to its establishment, *held*, that his payment of two or three assessments, levied on his land after district was established, did not estop him from attacking constitutionality of Pub. Acts 1909, chapter 185, under which drainage district was organized. (*Post, pp.* 482-487.)

Acts cited and construed: Acts 1909, ch. 185.

Cases cited and approved: Shepard v. Barron, 194 U. S., 553; South Ottawa v. Perkins, 94 U. S., 267; Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S., 24; Holcomb v. Boynton, 151 Ill., 300.

Case cited and distinguished: O'Brien v. Wheelock, 184 U. S., 450.

9. **CONSTITUTIONAL LAW.**

Whether public improvement confers special benefit is question of fact which legislature may submit to governmental agency. (*Post, pp.* 487, 488.)

Cases cited and approved: Arnold v. Knoxville, 115 Tenn., 195; State ex rel. v. Powers, 124 Tenn., 553; In re Forked Deer Drainage District, 133 Tenn., 684; Weed v. Boston, 172 Mass., 28; In re Madera Irrigation District, 92 Cal., 296.

10. **DRAINS.** Legislture, with object of improving submerged lands, may provide for means for determining cost of drainage, and fix principles on which cost should be apportioned.

Having for its object improvement of submerged or wet lands in certain sections of State, the legislature can, within constitutional limits, provide means for determining cost of draining lands, and fix principles on which cost thereof should be apportioned. (*Post, pp.* 488-491.)

Cases cited and approved: Smith v. Worcester, 182 Mass., 232; C., M. & St. P. R. Co. v. Janesville, 28 L. R. A., 1158.

11. **DRAINS.** Any part to proceeding to establish drainage district may appeal to circuit court for trial de novo, and have question determined whether improvement is a public purpose which will benefit lands within district (Pub. Laws 1909, chapter 185).

In proceeding to organize drainage district, under Pub. Acts 1909, chapter 185, declaration of county court that improvement includes necessary element of public purpose and special benefit is not final, but any party to proceeding may appeal to circuit court for trial *de novo*, and have question whether improvement is public purpose which will benefit lands within district determined. (*Post, pp.* 491-493.)

Case cited and approved: Drainage Dist. v. Askew, 140 Tenn., 322.

12. **DRAINS.** Provision of act providing for establishment of drainage districts, denying landowners right to reopen question of benefits, held not unconstitutional, in view of opportunity given each landowner to be heard on question (Pub. Acts 1909, chapter 185, sections 6, 8, 11).

As Pub. Acts 1909, chapter 185, by sections 6, 8, permits landowners to contest inclusion of their lands in proposed drainage district, because not for a public purpose, and because no benefit would be conferred on their lands, hence provision of section 11, denying landowners right to reopen question of benefits on objections to assessments, is not denial of any rights guaranteed by State and Federal Constitutions. (*Post, pp.* 493-494.)

Cases cited and approved: Barber Asphalt Paving Co. v. Fench, 158 Mo., 534; Carriger v. Morristown, 148 Tenn., 585; L. & N. Railroad Co. v. Barber Asphalt Co., 197 U. S., 432; Board of Directors v. Dunbar, 107 Ark., 285; Salmon v. Board of Directors, 100 Ark., 366.

Obion County v. Coulter.

### 13. CONSTITUTIONAL LAW.

Where provision is made for notice to and hearing of property owner at some stage of tax proceedings, it is due process of law. (*Post, p.* 494.)

Cases cited and approved: Tenn. Fertilizer Co. v. McFall, 128 Tenn., 645; Soliah v. Heskin, 222 U. S., 522; Wurts v. Hoagland, 114 U. S., 606; Hibben v. Smith, 191 U. S., 310; Davidson v. New Orleans, 96 U. S., 97; Spencer v. Merchant, 125 U. S., 345; Bauman v. Ross, 167 U. S., 548; Voigt v. Detroit, 123 Mich., 547.

### 14. DRAINS. Act, providing for organization of drainage districts, held not unconstitutional as requiring landowner to file claims for damages before he can know extent of damage (Pub. Acts 1909, chapter 185, section 3.)

Pub. Acts 1909, chapter 185, *held* not unconstitutional and void as requiring landowners to file claim for damages before location and dimensions of drainage district ditches or levees and amount of land proposed to be taken are so fixed that he can know extent of damage, in view of section 3, providing for filing by engineer of return, plat, and profile. (*Post, pp.* 494-496.)

### 15. STIPULATIONS. Where parties stipulated that only questions to be submitted where those presented in answer of defendant, defendant is estopped to raise other questions.

Where parties stipulated that only questions to be submitted and determined were those presented in answer of defendant, defendant is estopped to raise other questions on appeal. (*Post, pp.* 496, 497.)

---

*Headnotes 1. Drains, 19 C. J., Section 136 (Anno); 2. Drains, 19 C. J., Section 136; Judges, 33 C. J., Section 196; 3. Drains, 19 C. J., Section 7; 4. Constitutional Law, 12 C. J., Section 221; 5. Constitutional Law, 12 C. J., Section 220; 6. Constitutional Law, 12 C. J., Section 222; 7. Constitutional Law, 12 C. J., Section 220; 8. Constitutional Law, 12 C. J., Section 190; 9. Constitutional Law, 12 C. J., Section 330; 10. Drains, 19 C. J., Sections 207, 230; 11. Drains, 19 C. J., Sections 123, 124,

137; 12. Drains, 19 C. J., Section 250; 13. Constitutional Law, 12 C. J., Section 1062; Drains, 19 C. J., Section 229; 14. Drains, 19 C. J., Section 7; 15. Stipulations, 36 Cyc., p. 1292.

## FROM OBION.

Appeal from the Chancery Court of Obion County.— HON. V. H. HOLMES, Chancellor.

H. O. HEAD, of Sherman, Texas, for appellant.

C. N. LANNOM, H. H. LANNOM, F. J. SMITH, and HILLS-MAN TAYLOR, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

On September 17, 1919, a decree was entered by the county court of Obion county, Tenn., organizing Houser creek drainage district under chapter 185 of the Public Acts of 1909.

Defendant Henry O. Head (appellant here), who will hereinafter be referred to as defendant, owned six hundred thirty acres of land in one tract located within said district, which was assessed at one hundred per cent., the tax amounting to $1,243.44 per annum, made payable in semiannual installments of $621.72 each on the 1st day of May and October.

All assessments against defendant's land having been paid except the October, 1922, assessment, and all of this assessment having been paid except $21.72 which amount defendant failed or refused to pay, the bill in this cause was filed by Obion county for the use of the

drainage district on November 9, 1922, and is prosecuted to recover for the use of said drainage district said balance alleged to be due and unpaid on the October, 1922, assessment, and to recover other assessments due from landowners whose lands were included and assessed for taxes in said district, which had become delinquent.

The defendant answered the bill, challenging the validity of the assessment on the ground that the act under which the district was established and the tax levied is unconstitutional, and the assessment is therefore void and cannot be enforced.

The trial in the court below was had upon a written stipulation of facts entered into by the parties in lieu of proof. In this stipulation of facts it is agreed that all the requirements of the statute, with reference to the organization of the district, were complied with, and the only questions presented are the validity of the statutes under the Constitutions of the United States and this State, and whether the defendant is estopped to question its validity in this proceeding.

It was admitted that said defendant was made a party defendant to the proceeding had in the county court of Obion county to establish said district, and, being a nonresident of the State, was duly cited by publication as required by the act, but he at no time appeared either in person or by an attorney at any stage of the proceeding, or entered any defense to the establishment of said district.

It was further expressly agreed in the stipulation of facts that the only questions to be submitted to the court were those raised in the defendant's answer touching the

validity of the statutes relied on to sustain the assessment levied against his land.

The written stipulation of facts contains this further statement:

"In this case the complainant assents and agrees to the above and foregoing stipulation and agreement, with the following reservations, to-wit: The complainant reserves the right to insist that the defendant is precluded and estopped, in whole or in part, from attacking at this time the legality of the decrees and judgments complained of; that, as to the defendant, the judgments and decrees of the county court may not and cannot be set aside at this time in this proceeding, and the complainant reserves the right to have this question passed upon by the court in this case."

The stipulation was entered into by the complainant and the defendant on the 8th day of September, 1923, and is signed by counsel for complainant and the defendant Head.

Upon the hearing the chancellor sustained the bill and rendered a decree against the defendant for the amount of the unpaid balance on the October, 1922, assessment, interest, and attorney's fees, from which decree the defendant has appealed to this court and assigned errors.

The defendant in his answer challenges the constitutionality of the act and the validity of the assessment levied against his land upon the following grounds:

(1) That the act, as amended by section 5 of chapter 63 of the Public Acts of 1915, confided the question of whether the district should be established to the decision of the county judge of Obion county, who was interested in the event of the cause.

(2)    That the statute expressly prohibits the landowner from showing that his land will in no wise be benefited by the improvement.

(3)    That the act requires the landowner to file his claim for damages before he can know whether he is injured or his land damaged, and treats his failure to do so as a waiver of all claim to damages even for the value of the land actually taken in the establishment of said district.

(4)    That the statute gives to the interested county judge the power to appoint commissioners to classify the lands included in said district and make the assessments without notice to the landowners, or the right on their part to participate in their selection.

(5)    That the statute vests in the county judge, after the district has been established and he has become directly interested therein as a member of the board of directors created by section 18 of the act, the power to appoint commissioners to classify the lands, apportion the assessments, decide what lands are benefited and are to be assessed, and vests in the interested county judge the power and right to disregard the action of the commissioners in said matter, and himself finally determine them.

The answer averred that the vesting of all of these powers in the county judge, and the denial to the landowners whose lands have been included in said district the rights indicated above amounted to a taking of their property without due process of law, and denies them the equal protection of the law guaranteed to them by the Fourteenth Amendment of the Constitution of the

United States and the due process clause of the Constitution of this State.

The assignments of error urged in this court by the defendant present substantially these questions, and we will now proceed to consider and dispose of them in the order stated.

With reference to the first question urged by the defendant, it is provided in section 18 of chapter 185 of the Acts of 1909 that, after a drainage or levee district has been located or established as provided for in the act, the county court shall appoint two directors for such district, said directors to be owners of lands, or interested in lands in such district, and at least one of those first appointed to be one of the petitioners for the establishment of said district, or his successor in estate or interest, said directors to hold their offices for two years from the date of their appointment, and these two thus appointed and their successors, together with the county judge or chairman of the county court, shall constitute the directors of such district, and as such directors they shall have the general control and management of the business affairs of such district and supervision of the same, and be vested with the power and authority to make contracts provided for in the act, for all improvements to be done in said district.

By section 5 of chapter 63 of the Acts of 1915 (the amendatory act), it is provided that each member of the board of directors shall receive as compensation for their services in attending to their duties as directors fifty cents per hour for the time actually consumed in attending to their duties as directors, but not to exceed

twenty-five hours in any one month, and also their ac
tual expenses.

It is insisted by the defendant that this provision of
the amendatory act providing for compensation to the
directors for their services as such includes the county
judge, who is made a member of the board of directors
by section 18 of the original act, and created in him an
interest in the event of the cause which disqualified him
under the Constitution of this State from presiding in
said proceeding to establish said district, and prevented
him from constituting an impartial tribunal guaranteed
to the landowner by the Constitution.

It is provided in article 6, section 11, of the Constitu-
tion:

"No judge of the supreme or inferior courts shall pre-
side on the trial of any cause in the event of which he
may be interested, or where either of the parties shall be
connected with him by affinity or consanguinity, within
such degrees as may be prescribed by law, or in which
he may have been of counsel, or in which he may have
presided in any inferior court, except by consent of all
the parties."

In Shannon's Annotated Code, section 5706, it is pro-
vided:

"No judge or chancellor shall be competent, except
by consent of all parties, to sit in the following cases:
(1) Where he is interested in the event of any cause;
(2) or connected with either party, by affinity or consan-
guinity, within the sixth degree, computing by the civil
law; (3) or has been of counsel in the cause; (4) or has
presided on the trial in an inferior court; (5) or, in crim-
inal cases for felony, where the person upon whom, or

upon whose property, the felony has been committed, is connected with him by affinity or consanguinity within the sixth degree, computing by the civil law.''

If the defendant's contention were well grounded, the point could not now be made by him; he having failed to make objection to the disqualification of the county judge *in limine* and at the hearing of the proceeding to establish the district. The incompetency or disqualification of a judge, by reason of his interest, relationship within the prohibited degree, having been of counsel, or having presided in the inferior court, is waived in civil cases by failure to make the objection *in limine* on the hearing, and the parties are conclusively presumed to have consented to his presiding at the trial. *Wroe* v. *Greer,* 2 Swan., 172; *Crozier* v. *Goodwin,* 1 Lea, 125; *Hilton* v. *Miller,* 5 Lea, 395; *Holmes* v. *Eason,* 8 Lea, 754; *Posey* v. *Eaton,* 9 Lea, 500; *Hume* v. *Bank,* 10 Lea, 6, 43 Am. Rep., 290; *Nashville* v. *Thompson,* 12 Lea, 344; *Trust Co.* v. *Lumber Co.,* 92 Tenn., 126, 21 S. W., 329; *Grundy County* v. *Coal Co.,* 94 Tenn., 325, 29 S. W., 116; *In re Cameron,* 126 Tenn., 662, 151 S. W., 64.

However, we do not think that the act in question should be given the construction contended for by the defendant. In view of the fact that the compensation of the county judge is fixed by statute, it will not be presumed that the legislature intended, by the act in question, to provide additional compensation to him for the duties to be performed by him as a member of the board of directors of such district, but that it was intended only to provide compensation for the directors appointed by him, and whose compensation had not been fixed, and but for the provisions of section 5 of the amendatory act of 1915

would receive no compensation for their services. We think this is a reasonable construction of the act.,

Every presumption is always in favor of the constitutionality of the act. *State* v. *Woolen,* 128 Tenn., 456, 161 S. W., 1006.

A statute will be so construed that it may be held constitutional, if this can be done reasonably. *Jones* v. *Coal Creek Min., etc., Co.,* 133 Tenn., 159, 180 S. W., 179.

In cases of doubt, the court will give that construction to an act which will sustain its validity and constitutionality, instead of destroying it, when that can reasonably be done. *State* v. *White,* 132 Tenn., 203, 177 S. W., 478.

All doubts will be resolved in favor of the constitutionality of an act of the legislature passed in due form, and that interpretation given it which will support its constitutionality. *Palmer* v. *Souther Express Co.,* 129 Tenn., 116, 165 S. W., 236; *Heiskell* v. *Knoxville,* 136 Tenn., 376, 189 S. W., 857; *State* v. *Freels,* 136 Tenn., 483, 190 S. W., 454; *Railroad* v. *Harris,* 99 Tenn., 684, 43 S. W., 115, 53 L. R. A., 921.

Where one construction of a statute will render it void, and another will render it valid, the latter will be adopted, though the former at first view is the more natural interpretation of the words used. *Palmer* v. *Southern Express Co.,* supra.

The recognized rule is that, where of two constructions one would render the act void and the other valid, the latter is to be chosen, even though it be not the most obvious or the most probable. *Riggins* v. *Tyler,* 134 Tenn., 577, 184 S. W., 860.

The construction which we feel constrained to give the act in question is borne out by the language contained in

153 Tenn.—31.

section 5 of the amendatory act, in that the compensation therein provided for to the directors is to be made for the time actually consumed by them in attending to their duties. The time and services of the county judge have already been provided for and fixed by statute agreeable to the Constitution by a definite salary, which cannot be increased or diminished during his term of office. The additional duties which the legislature may see proper to impose upon the county judge from time to time are in addition to those already devolved upon him under the law, and he must perform them without additional compensation. We do not therefore think that it was the intention of the legislature to allow the county judge additional compensation for the duties imposed on him as a member of the board of directors of the district created by section 18 of the original act.

We now come to a consideration of the second question presented in the defendant's answer and assignments of error, which is to the effect that chapter 185 of the Acts of 1909 is unconstitutional and void, in that it expressly prohibits the owner of the land assessed to pay the cost of the improvement from introducing proof that his land will not be benefited, and should not be assessed for any amount for this reason.

It is insisted by complainant that, the defendant not having made this question on the hearing of the proceeding had in the county court to establish said drainage district, he is estopped to make it now; in fact, that he is now estopped to challenge the constitutionality of the act upon any of the grounds urged in his answer and his assignments of error for this reason, and this question must first be disposed of.

It was held in *Shepard* v. *Barron,* 194 U. S., 553, 24 S. Ct., 737, 48 L. Ed., 1115, that, where a public improvement is completed, and the assessment made at the instance and on the petition of the owners of the property, and pursuant in form, at least, to an act of the legislature of the State, and in strict compliance with its pro-visions, and with the petition there is an implied contract that the parties, at whose request and for whose benefit the work was done, would pay for it in the manner provided for by the act, and after the completion of the work they could not set up the unconstitutionality of the act to avoid the assessment; in other words, that they were estopped to say that the act was unconstitutional and the assessment void.

This, however, is not the case we have under consideration. In the stipulation of facts entered into by the complainant and the defendant it is expressly stated that defendant was a party to the proceeding had in the county court to establish the district as a defendant only, but at no time appeared either in person or by an attorney at any stage of the proceedings, and took no steps whatever looking to the establishment of the district; in other words, the district was not established at his request or instance, and he did nothing upon which the doctrine of estoppel can rest, unless it was that he paid two or three of the assessments that were levied against his land after the district was established, and a portion of the October, 1922, assessment.

In *O'Brien* v. *Wheelock,* 184 U. S., 450, 22 S. Ct., 354, 46 L. Ed., 636, it is said:

"The construction of the State Constitution in Harward's case and others has been repeatedly recognized by this court as authoritatively established.

"And as this was the settled law of the State when these bonds were issued, and the Constitution of 1870 admitted of no other construction, we concur in the opinion that the act of 1871 [Laws 1871-72, p. 356] was repugnant to the Constitution of Illinois; the bonds due under it were void; and the lands intended to be benefited could not be specially assessed by any action taken in conformity with the provisions of that act. . . .

"But it is contended that while all this may be so as to the general public, yet that appellees, or some of them, have so conducted themselves that they are estopped from asserting such invalidity, and that the circuit court should have enforced the assessments exactly as if the law had been a constitutional enactment. The bill sought to collect not only the assessments already made, but asked to have further assessments made to pay the bonds in full, and to maintain and preserve the security; and the court was also asked to declare that the assessments created valid liens upon the lands, and to decree that the bonds sued on were a lien on the assessments, and to enforce their collection; in other words, that the court execute the act, either as in itself wholly valid or valid as to these defendants. We are unwilling to assent to the doctrine of legislation by estoppel. The courts cannot, by the execution of an unconstitutional law as a law, supply the want of power in the legislative department.

"In *South Ottawa v. Perkins,* 94 U. S., 267, 24 L. Ed., 157, this court said: 'There can be no estoppel in the

Obion County v. Coulter.

way of ascertaining the existence of a law.  That which purports to be a law of a State is a law, or it is not a law, according as the truth of the fact may be, and not according to the shifting circumstances of parties.  It would be an intolerable state of things if a document purporting to be an act of the legislature could thus be a law in one case and for one party, and not a law in another case and for another party; a law to-day, and not a law tomorrow; a law in one place, and not a law in another in the same State.  And whether it be a law, or not a law, is a judicial question, to be settled and determined by the courts and judges.  The doctrine of estoppel is totally inadmissible in the case.'

"In that case the invalidity of the law grew out of the fact that the journals of the Senate and House did not show the passage of the bill as the Constitution required it to be shown.  Bonds had been issued, bought innocently, and the town had paid one installment of interest, but it was held that the bonds could not be sustained on the doctrine of estoppel.  In this case the bonds were signed, issued and sold by the commissioners, and the interest which was paid was paid by the commissioners.  The landowners had no control of the question whether bonds should be issued, and were not in privity of contract with the purchasers of the bonds.  As the act, the assessments, and the bonds were void, the landowners, when it was sought to subject their property to those assessments for the payment of the void bonds, could not be estopped on the ground that the law itself, though void, was valid as to them.

"Even in the instance of contracts of a corporation beyond the scope of its corporate powers, the law is well

settled in this court that nothing which has been done under them or the action of the courts can infuse any vitality into them. *Central Transp. Co.* v. *Pullman's Palace Car Co.,* 139 U. S., 24, 11 S. Ct., 478, 35 L. Ed., 55. . . .

"The grounds of estoppel claimed in this case seem to be that one or more of the defendants secured the passage of the act of 1871; that others actively participated as petitioners and otherwise in the organization of the levee district before the bonds were issued; that others, who took no part whatever in any of the proceedings, after the bonds were issued and the law was held to be unconstitutional, united in an attempt to maintain and repair the levee by voluntary contributions; that others, who neither said nor did anything, knowing that the proceedings were pending and that the levee was in course of construction, remained quiescent; that others paid interest on their assessments for the years 1873 and 1874; that others participated in the organization of the new and legal levee district after the Constitution of Illinois had been amended and a law passed authorizing the formation of levee districts; and that others purchased lands after the Webster case was decided, and their deeds contained certain references to the act of 1871.

"We think that the evidence fails to show that Palms relied, or had the right to rely, on the acts, or assurances, or silence, of any of these different classes of landowners, and was thereby misled. He purchased the bonds, not of the landowners, or any of them, nor from the levee commissioners, but in the open market, and on the advice of counsel as to the legality of the proceedings. The landowners who participated in any way in the creation

of the drainage district were as vitally interested in the matter as any purchaser of bonds could be, and they acted equally in the mistaken belief that the law was valid. It would be a novel idea, as the supreme court of Illinois remarked in *Holcomb* v. *Boynton,* 151 Ill., 300, 37 N. E., 1033, 'in the law of estoppel that the doctrine should be applied to a person who has been guilty of no fraud, simply because, under a misapprehension of the law, he has treated as legal and valid an act void and open to the inspection of all.' "

Also see Ann. Cas. 1915B, 753, note, and numerous cases there cited.

We think these cases sufficiently dispose of the question of estoppel, and this question need not be given further notice.

We, therefore, pass to the question of whether the act is void for the reason as insisted by the defendant that it forbids a hearing to determine whether the lands embraced within the district will be benefited by the improvement.

Since the decision of this court in *Arnold* v. *Knoxville,* 115 Tenn., 195, 90 S. W., 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas., 881, applicable to municipal improvement districts, was extended to drainage districts in *State ex rel.* v. *Powers,* 124 Tenn., 553, 137 S. W., 1110 (also *In re Forked Deer Drainage District,* 133 Tenn., 684, 182 S. W., 237), sustaining chapter 185 of the Acts of 1909 as a valid exercise of the legislative power, the authority of the legislature to select or create new governmental agencies, and delegate to them the power of making special assessments for public improvements, cannot be questioned, whatever might be said of the policy of the stat

ute, or the success or failure of the project therein provided for. In each instance the foundation of special assessments is that the improvement is a public use coupled with a special benefit, actual or probable, to the property assessed in excess of the benefit inuring to the public at large. Whether the public improvement will confer a special benefit is a question of fact which the legislature may submit to the governmental agency for determination. *Arnold* v. *Knoxville,* supra; *Weed* v. *Boston,* 172 Mass., 28, 51 N. E., 204, 42 L. R. A., 642; *In re Madera Irrigation District,* 92 Cal., 296, 28 P., 272, 675, 14 L. R. A., 755, 27 Am. St. Rep., 106.

Having for its object the improvement of submerged or wet lands in certain sections of this State, the legislature could, within constitutional limits, provide means for determining the cost of draining such lands and fix the principles upon which the cost thereof should be apportioned. *Smith* v. *Worcester,* 182 Mass., 232, 65 N. E., 40, 59 L. R. A., 729; *Chicago, M. & St. P. R. Co.* v. *Janesville,* 28 L. R. A. (N. S), note, 1158.

· The provision of the act under consideration, assailed by the defendant in his second assignment of error, is the concluding part of section 11, which forbids the introduction of evidence that the improvement will confer no benefit at the stage of the proceeding where the county court is required by the act to classify the lands and apportion the assessments in the ratio of benefits.

A proper solution of this question requires reference to certain sections of the act which confers jurisdiction on the county court to establish a drainage district through a prescribed and well-defined procedure.

Section 3 of the act provides that, after the petition has been filed and bond taken as provided in section 2 thereof, the county court shall, at its first session thereafter regular, special or adjourned, appoint a disinterested and competent engineer, and have placed in his hands a copy of said petition, and he shall proceed to examine the lands described in said petition and any other lands that would be benefited by said improvement, or necessary in carrying out such improvement, and survey and locate such drain or drains, ditch or ditches, levee or levees, improvement or improvements, as may be practicable to carry out the purposes of the petition, and which will be of public benefit or utility or conducive to the public health or welfare; that he shall make return of and file his proceedings with the county clerk, which return shall set forth the starting point, the route, the *terminus* or *termini* of the ditch or ditches, drain or drains, levee or levees, or other improvements, such as the straightening or shortening of water courses, cleaning out the bed thereof, etc., together with a plat and profile showing the ditches, drains, or other improvements, and the course and length of the same approximately through each tract of land as far as may be practicable, and the total length, course, and elevation as near as may be of all lakes, ponds, and deep depressions in said tract, and the fall obtainable across said tract, the boundary of the proposed tract, and the description of each tract of land therein as shown by the tax books, the names of the owners thereof, as shown by the tax books, together with the probable cost of the improvement, and such other facts and recommendations as he may deem material.

Section 4 provides that upon the filing of the return of the engineer the county court shall examine the return, and, if the plan appears feasible, all landowners (residents by service of summons and nonresidents by publication) shall be notified of the proceeding and its purpose, and of the time and place for hearing objections and remonstrances against the organization of the tract which includes the question of benefit to the land. By the proceeding under section 4 the county court determines the estimated cost of the improvement, omitting damages for the lands required by the drain, ditch, or levees.

In section 5 it is provided that any person claiming damages as compensation for or on account of the construction of such improvement shall file such claim in the office of the county court clerk at least five days prior to the date on which the petition has been set for hearing as provided for in section 4, and on failure to file such claim at the time specified it is provided that he shall be held to have waived his rights thereto, provided, however, if such person be an infant or *non compos mentis,* without regular guardian, or such guardian has not been notified of the proceeding in the manner provided for in section 4, and these facts are made to appear by affidavit, the court shall appoint a guardian *ad litem* for such person, who may file such claim for damages, if deemed proper, for the person so under disability within the time allowed in section 4, or within five days after being so appointed.

Section 6, contemplating the facts assembled through procedure under the above-mentioned sections, provides that, if the court should be of the opinion that the drain-

age district would not be for the public benefit or utility, or conducive to the public health or welfare, it shall be dismissed; otherwise, the court shall proceed under section 8, which provides that if the court, in its judgment, should be of the opinion that the probable cost of construction is not a greater burden than should be properly borne by the land benefited by the improvement, and the improvement is conducive to the public health or welfare, or to the public benefit or utility, then the court shall locate and establish such drainage or levee district by proper order or judgment to be entered of record, and the court shall thereupon proceed to determine the amount of damages sustained by each claimant, and may hear evidence in respect thereto, and may increase or diminish the amount awarded by the viewers, as may seem just and right.

But the declaration that the improvement includes in its combined nature the necessary elements of a public purpose and a special benefit, the first requisite to the exercise of the taxing power, and the second necessary to justify the special assessment on the basis of the benefit conferred upon the land (Page and Jones on Taxation by Assessment, vol. 1, sections 283, 284, and volume 2, section 666), is not final. Any party to the proceeding may appeal to the circuit court for a trial *de novo,* and upon demand, before a jury, have determined, among other things, whether the improvement is a public purpose which will also benefit the lands within the district. *Drainage District* v. *Askew,* 140 Tenn., 322, 204 S. W., 984.

After thus proceeding to a determination of whether the improvement is a public purpose, and would, in addi-

tion, specially benefit the land included in the tract, the legislature, recognizing another essential to a valid public assessment against the lands upon the theory of special benefits, prescribed the mode of procedure to determine the apportionment of the taxes according to the ratio of the benefit. This is done in section 11, which provides that, when the drainage or levee district, or other improvement provided for in the act, shall have been located and established as provided for in the act, the county court shall appoint three commissioners, one of whom shall be a competent civil engineer, and two of whom shall be freeholders of the county not living within the levee or drainage district, and not interested therein, or in a like question, nor related to any party whose lands are affected thereby, and that said commissioners shall inspect and classify the lands in a graduated scale, and report their action to the court for review, when the court shall cause notice to be served upon any person whose name appears as the owner, and upon any person in actual occupancy of the land, which notice shall state the amount of special assessments apportioned to each owner on each tract or lot, the day set for hearing the same before the court, and all objections thereto must be made in writing and filed with the county clerk on or before noon of the day set for hearing, and said notices shall be signed by the county clerk and served at least five days before the time set for hearing; that, if any such owner be a nonresident of the State or his name or residence is unknown and cannot be ascertained after diligent inquiry, then service of such notice upon the resident agent or attorney of such person shall be sufficient; that, if there be no such resident agent or attorney of

such person, then the assessment may be made without notice, just as taxes are assessed without notice in such cases; that, when the day set for hearing has arrived, and the hearing is not continued by the court for good reason, as it may be, and when the hearing is had, the county court shall proceed to hear and determine all objections made and filed to said report, and may increase, diminish, annul, or affirm the apportionment and assessments made in such report, or in any parts thereof, as may appear to the court to be just and equitable; but in no case shall it be competent to show that the lands assessed would not be benefited by the improvement; and that, when such hearing shall have been had, the county court shall assess such apportionment so fixed by it upon the lands upon such levee or drainage district.

At this stage of the proceeding the act forbids reopening the question that no benefit will be conferred by the improvement, because this fact has been determined and foreclosed by the judgment of the court in establishing the district as provided in sections 6 and 8, under which all landowners are permitted to contest the inclusion of their lands in the proposed district because it is not a beneficial public purpose, and because no benefit would be conferred upon their lands by the establishment of the district. The provision of section 11 denying the landowners the right to reopen the question of benefits is not a denial of any right guaranteed by the State and Federal Constitutions because, by due process, the question of benefits has already been determined by the court. Section 13 of the act provides for an appeal to the circuit court from an order fixing the assessment of benefits upon the lands under the provisions of section 11.

It will be seen, from what has been above stated, that the statute gives to each landowner an opportunity to be heard upon the question of benefits before the assessment becomes final, and the decision of the county court that the improvement would confer a special benefit upon the lands is final, unless an appeal is prosecuted therefrom to the circuit court as provided in section 13 of the act; in other words, the assessment of benefits by the county court will not thereafter be open to review. *Barber Asphalt Paving Co.* v. *Fench,* 158 Mo., 534, 58 S. W., 934, 54 L. R. A., 500; *Carriger* v. *Morristown,* 148 Tenn., 585, 256 S. W., 883; *L. & N. Railroad Co.* v. *Barber Asphalt Co.,* 197 U. S., 432 25 S. Ct., 466, 49 L Ed., 819; *Board of Directors* v. *Dunbar,* 107 Ark., 285, 155 S. W., 96; *Salmon* v. *Board of Directors,* 100 Ark., 366, 140 S. W., 585; *Shepard* v. *Barron,* supra.

Where provision is made for notice to and a hearing of the property owner at some stage of the tax proceedings, it is due process of law. *Tennessee Fertilizer Co.* v. *McFall,* 128 Tenn., 645, 163 S. W., 806; *Soliah* v. *Heskin,* 222 U. S., 522, 32 S. Ct., 103, 56 L. Ed., 294; *Wurts* v. *Hoagland,* 114 U. S., 606, 5 S. Ct., 1086, 29 L. Ed., 229; *Hibben* v. *Smith,* 191 U. S., 310, 24 S. Ct., 88, 48 L. Ed., 195; *Davidson* v. *New Orleans,* 96 U. S., 97, 24 L. Ed., 616; *Spencer* v. *Merchant,* 125 U. S., 345, 8 S. Ct., 921, 31 L. Ed., 763; *Bauman* v. *Ross,* 167 U. S., 548, 17 S. Ct., 966, 42 L. Ed., 270; *Voigt* v. *Detroit,* 123 Mich., 547, 82 N. W., 253; L. R. A., 1916E, 14 *et seq.*

The third question presented for consideration is whether the act is unconstitutional and void in that it requires the owner of land which it is proposed to assess for the construction of the drainage ditch or levees to

file his claim for damages before the location and dimensions of the ditch or levees, and the amount of his land it is proposed to take are so fixed that he can know the extent to which he will be damaged.

We are of the opinion that there is no merit in this contention. In section 2 of the act it is provided that, before any county court shall establish a levee or drainage district, or any levee, ditch, drain, or watercourse improvements, as provided for in the act, a petition shall be filed by one or more of the interested parties, which shall be filed in the office of the county court clerk of the county in which the improvement is proposed to be made, setting forth the lands included in such district, describing them by metes and bounds, or otherwise, so as to convey an intelligible description of such lands, and setting forth in said petition as near as may be the starting point, route, *terminus,* and lateral branches, etc.

The provisions of section 3 of the act have hereinbefore been set out and need not be restated at this point. It suffices to say that the return, plat, and profile which the engineer is required to filed with the county court clerk showing the ditches, drains, or other improvements, and the length of the same approximately through each tract, etc., the boundary of the proposed district, and the description of each tract of land included therein conveys information to the landowner that his land has been included in the district, and this return enables the landowner to see and know to what extent he will be damaged by the establishment of the proposed district, and from this he is enabled to intelligently file his claim for damages within the time prescribed in section 5 of the act.

Now, coming to the fourth question, which is that the act is unconstitutional and void because it is provided in section 11 that the commissioners, who are to assess the damages sustained by the property owners whose lands have been included in said district, shall be selected by the county judge, who is interested in the event of the cause by reason of his being made a member of the board of dirctors in section 18 of the act; and in section 5 of the amendatory act of 1915 compensation is provided for him as such director.

It suffices to say that what we have already said in disposing of the defendant's first contention is a sufficient answer to this question, and further elaboration is unnecessary.

The same is true of the fifth and last question presented in the defendant's answer and assignments of error. The county judge had no such interest in the establishment of the district as disqualified him to appoint the comissioners. It was entirely proper for the legislature to vest him with such authority, and vest him with the authority to review the apportionment and assessments made by the commissioners, and increase, diminish, annul, or affirm such apportionment and assessments as might appear to him to be just and equitable, from which decision the landowners are given the right of appeal to the circuit court of the county in section 13 of the act.

It is insisted by the defendant that the act is unconstitutional and void upon other grounds not set up in his answer, but only in assignments of error contained in a supplemental brief filed in this court.

Obion County v. Coulter.

These assignments of error will not be noticed because in the written stipulation of facts it was expressly agreed that the only questions to be submitted to and determined by the court were those presented in the answer of the defendant.  The defendant is therefore estopped to raise other questions.

All of the questions raised by defendant in his answer have bene considered and disposed of, with the result that we find no error in the decree of the chancellor, and his decree will be affirmed, with costs.

The cause is remanded to the chancery court of Obion county for further proceedings, and, if necessary, for a sale of defendant's land for the satisfaction of the recovery decreed against the defendant in complainant's favor, the decree of the chancellor so providing.

Appellant, Head, will be taxed  with the costs of the appeal.