E. R. Moody

*v.*

Dyer County Levee and Drainage District No. 1

(*Jackson,* April Term, 1961.)

Opinion filed May 5, 1961.
Rehearing Denied July 26, 1961.

Palmer & Walker, E. T. Palmer, Ewell & Ewell,.. M. Watkins Ewell, Sr., Dyersburg, for petitioners.

Ashley & Ashley, Dyersburg, for respondent.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The Levee and Drainage District was created by the County Court of Dyer County in 1953 under the authority of Section 70-901 et seq., T.C.A. (these sections are fundamentally Chapter 185 of the Public Acts of 1909, which Act was held constitutional in *Obion County for Use of Houser Creek Drainage Dist. v. Coulter,* 153 Tenn. 469, 284 S.W. 372), upon a petition of the owners of over 100,-000 acres of lowlands in Dyer County, which were subject to the overflow of the Mississippi, Obion and the Forked Deer Rivers.

The Court of Appeals in its opinion very succinctly and aptly describes this territory and these rivers thus:

"The Mississippi River bounds Dyer County for the entire length of its western boundary. The federal government, through the U. S. Engineers, for many years had maintained an adequate levee on the Tennessee side from the bluff at Hickman, Kentucky, southward along the Western Margin of Lake County to the Dyer County

line. Private interests have maintained an inadequate levee along the western margin of Dyer County for several years.

"The Obion River, generally speaking, traverses Dyer County from north to south parallel with the Mississippi River and runs into the Mississippi at Hales Point in Lauderdale County a few miles south of the southwest corner of Dyer County. The Forked Deer River enters Dyer County from the east and runs generally in a southwesterly direction and then in a generally westerly direction forming the north boundary line of Lauderdale County and running into the Obion River at Tigertail.

"The Forked Deer River and its tributaries drain all rain water from central West Tennessee as far east as the vicinity of Jackson, Tennessee. The Obion River and its tributaries drain all of northwest Tennessee including the area around Reelfoot Lake. The channels of both the Obion River and the Forked Deer River are crooked and stopped up with drifts and willows. Heavy rainfall in west Tennessee can and often does make the Obion and Forked Deer Rivers overflow even when the Mississippi is at low stage. Of course, the higher the stage of the Mississippi River the less rain water it takes to make the Obion and Forked Deer Rivers back out of their banks."

All necessary steps were taken as to notice, etc., creating this drainage district, and the Commissioners pursuant to the Act were named to go upon the lands involved in these three projects and to assess the amount necessary to pay a total cost of over $300,000 on the basis of percentage of benefits received from one or more of the

projects by each tract of land within the district. The Commissioners were furnished with all necessary maps, etc., showing elevations and anything else you could think of that is necessary in such things, and with this information they went upon the land and made their findings as to the percentage of benefits each landowner was to pay upon each particular tract of land.

From this finding of the Commissioners the respondent, Moody, who was the owner of two tracts of land, appealed the finding against him to the Circuit Court where the matter was tried before the Circuit Judge by the introduction of the Commissioners who showed the method upon which they assessed these benefits to respondent, Moody, and the reasons why they assessed the amount as they did. These various Commissioners went upon and over the land, and then through a formula, which was explained to the Circuit Court, they adopted the various methods of assessing these parties, and in particular the respondent, Moody. Moody complains of the assessment on two tracts, Tract No. 355 and Tract No. 540. There is no question here as to the allocation of the benefits against Moody on Tract 540, and apparently no complaint about the assessment on 183 acres of Tract No. 355, but as to approximately 1100 acres of this tract is where the disagreement comes between the Court of Appeals and the trial court. The trial court approved and affirmed the holding of the Commissioners which was approved by the County Judge of Dyer County. As said above, this hearing was had before the Circuit Judge upon the evidence of these various Commissioners, how they arrived at this amount, all of whom were ably cross-examined by able counsel for the respondent, Moody. In addition to this, respondent, Moody, offered various and sundry witnesses

to show that this 1,100 acres of land would not receive the benefits that other land would and that a different percentage was fixed against him from others in the district. Among other things that Moody showed from his evidence herein was that the majority of his lands in this 1,100 acre tract were timber lands and the percentage of benefits would be much less to timber land than it would be to cleared or farm lands and that the appraisers for loans on farms didn't put as high a valuation on this 1,100 acre tract of land as they put on lands situated other places, because in their judgment the land didn't have the necessary benefits the way the levee and drainage ditches, etc., were fixed. As said above, all of this was tried before the Circuit Judge who saw and heard all of these various Commissioners, and the fact that they had gone over the land and they felt that their theory and method of determination as to the benefits that would be received were fair, equitable and logical. The trial judge accepted this theory.

The Court of Appeals reversed the trial judge because "this is the first opportunity plaintiff in error, Moody, has had to litigate his claim of no benefits to his 1,100 riverside acres from the creation of the Dyer County Levee and Drainage District No. 1. Therefore, we hold that the provisions of T.C.A. Section 70-909 do not bar the plaintiff, Moody, from raising the question of no benefits in the present litigation."

This quotation is the lawsuit here.

Briefly, Moody's contention lies around a state of facts, as follows: the 1,100 acre tract of land in question is on the river side. In other words, it is between the Mississippi and the levee; when, according to his contention,

the Mississippi gets to a certain height it would make more or less of a drain through and over this 1,100 acres of land, and that by reason of this District being created and the levee built where it was, this 1,1000 acres of land is not benefited at all, according to his contention. His contention likewise is that by reason of cleaning out these other rivers and an old levee that is there and the barrow pits and ditches drawn from it up there this land is not benefited in the least. This was brought out very forcibly through his cross-examination of the various Commissioners and the evidence that he offered. Frankly, if we were determining the lawsuit under the proof as established in this record, we would clearly have to adopt Moody's theory and contention as did the Court of Appeals. The Court of Appeals held that there were no benefits to this tract and remanded for further proceedings. We can't see that there would be any benefit in this because taking the proof as it is it convinces us of this fact, but we must take into consideration the fact that all of these Commissioners went over this land, viewed it and all the land in the District, and after doing so they were satisfied and felt that the apportioned benefits they assessed were derived by the land, and they so convinced the County Judge as well as the Judge of the Circuit Court of this fact. This being true, we come down to the question then of whether or not under the statute (Section 70-909, T.C.A.) this Court has any right on this question of benefits or no benefits in the territory to make any finding whatsoever.

This Section of the Code, 70-909, provides for a hearing, and the hearing may be continued by the court for good reason, and ''the county court shall proceed to hear and determine all objections made and filed to said report,

and may increase, diminish, annul, or affirm the apportionment and assessments made in such report, or any parts thereof, as may appear to the court to be just and equitable; *but in no case shall it be competent to show that the lands assessed would not be benefited by the improvement;* and the county court shall assess such apportionment so fixed by it upon the lands within such levee or drainage district." (Emphasis ours.) In *Obion County for Use of Houser Creek Drainage Dist. v. Coulter,* supra, the italicized provision, denying the landowner the right to reopen the question of no benefits accruing to his land, was held valid, in view of the opportunity given him to be once heard.

A very comprehensive note on this question is found in 84 A.L.R., beginning at page 1098, and then again as supplemented in 145 A.L.R., beginning at page 1196. In the first annotation there are cases cited from United States Courts, including many from the Supreme Court of the United States, and practically every State in the Union, including the Obion County case, supra, to a note reading thus:

"It is not essential to the validity of statutes governing drainage proceedings that they should provide for notice to the landowners of the initial step, or every intermediate step therein. Notice of preliminary matters which lead up to, but do not directly involve, the determination of the amount for which each tract is to be assessed, is not necessary, but it is generally held sufficient if the landowner is given the right to notice and an opportunity to be heard on the question of benefits and damages at some state of the proceedings."

There is no question herein but that all the statutory proceedings and notice were given Moody; he was ap-

praised of all these different steps and took a part therein in perfecting his appeal from the County Judge to the Circuit Judge, and had an opportunity and did there attempt to show that there were no benefits derived by this body of land in question. Both lower courts decided against him. Thus it is that he has had an opportunity and has been heard on benefits and damages, had a proceeding, and it has been held against him.

This same note, 84 A.L.R. 1099, cites many cases to the proposition, that the right of an appeal in drainage district proceedings is not essential to due process at all and the denial of such right, if they have once had an opportunity to be heard is constitutional. See page 1109, sub-section V, 84 A.L.R. In this note will be found the following quotation from *Ross v. Board Sup're of Wright County*, 128 Iowa 427, 104 N.W. 506, 1 L.R.A.,N.S., 431 to-wit:

"* * * The power to make a final determination beyond which there is no appeal must rest somewhere, and in the absence of express or clearly implied constitutional limitations upon its authority in this respect the legislature may confide that power in any given proceeding to any court, board, or commission. Of course, the tribunal thus designated must observe due process of law,—that is, the party must be given notice and have opportunity to be heard,—but if the finding be against him, no constitutional guaranty is violated by denying him the right of appeal."

This is a statement of the general law as to the portion of our statute here under consideration, which reads "but in no case shall it be competent to show that the lands assessed would not be benefited by the improve-

ment; * * *." This having been held constitutional by our Court as hereinbefore indicated and it being the general law of the land that parties here have had their opportunity to be heard on these questions, this hearing is final.

■ It must be remembered that the Commissioners (nonresidents of the district and one a trained civil engineer), duly appointed here, have gone over this land personally with various and sundry maps and all of these things, and after going over it entirely they worked out this formula which they deem as fair and equitable for the benefits assessed against the various individuals. Our question then, it seems to us, is to determine whether or not these Commissioners in making their determination as to the benefits received have exceeded their jurisdiction or acted fraudulently, illegally or arbitrarily. We, of course, remember the well-established principle that the weight to be given the particular evidence in a case of this type is a matter peculiarly within the province of these people unhampered by ordinary legal rules governing the inadmissibility or not of such evidence. In 17A Am.Jur., page 489, Section 66, under the Chapter on Drains and Sewers this very apt statement is made:

"* * * As is fully shown in another article, the law does not require that special assessments correspond exactly to the benefits received; on the contrary, it is a matter of common knowledge that absolute equality cannot be attained, and so long as a fair and reasonable method of spreading the assessment is followed, the courts will not intervene for minor inequalities."

Thus it is, after spending several days reading this record, briefs, which were excellent, hearing argument,

and making an independent study of the matter, we have concluded that the Court of Appeals is in error, and that the judgment of the trial judge must be affirmed for the reasons hereinbefore expressed.

### On Petition to Rehear

There has been filed herein by Mr. Moody through able counsel a courteous and dignified petition to rehear.

After thoroughly considering this petition and the statutes therein quoted we are satisfied beyond question that our original opinion answered all these questions. There being nothing cited we have not heretofore considered and we being satisfied that the law with reference to these things has been properly applied by our original opinion, we must overrule this petition to rehear.