S. M. WILLIAMSON & COMPANY *v.* W. G. SHELTON, *et al.*[*]

(*Nashville*. December Term, 1928.)

Opinion filed December 22, 1928.

168

*Corpus Juris-Cyc References: Constitutional Law, 12CJ, section 220, p. 787, n. 96; Drains, 19CJ, section 73, p. 650, n. 82; section 74, p. 651, n. 90; section 119, p. 664, n. 98; section 229, p. 728, n. 52; section 238, p. 733, n. 88; section 240, p. 734, n. 92; section 244, p. 734, n. 4; section 261, p. 745, n. 38; Statutes, 36Cyc, p. 952, n. 8.

WILSON, GATES & ARMSTRONG, for Williamson & Co., appellants.

RIDDICK & RIDDICK, W. M. MAYO, R. E. L. GALLIMORE, and CARL L. GRAVES, for Shelton, et al., appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Complainant, S. M. Williamson & Company, is the owner of land located within the boundaries of a Drainage District, created by judgment of the County Court of Fayette County, and including lands in Fayette, Tipton and Shelby Counties, known and designated as the Beaver Dam Drainage District of Fayette, Shelby and Tipton Counties. The land included within the District is described in the report of an engineer, upon the faith of which the District was organized, as being subject to overflow by Beaver Dam Creek, and lies in close proximity to the creek, along its course from a point in Fay-

ette County to a point in Shelby County, where the creek empties into the Loosahatchie River.

Complainant's land lies in Shelby County. At the time the District was organized, and the assessment made by the county court, complainant was the owner of a mortgage or deed of trust on the land, executed by the then owner, J. A. Phillips. Complainant subsequently purchased the land for its own protection, when default was made and the mortgage or deed of trust was executed.

The bill seeks to remove the assessment made by the county court for the benefit of the Drainage District, as a cloud upon complainant's title, and upon various grounds seeks a decree that the organization of the District was wholly illegal and void, and that proceedings in the county court subsequent to the organization of the District and essential to the legality of the assessment were conducted in such irregular and unlawful manner as to render the assessment void. The Chancellor dismissed the bill on demurrer, and complainant has appealed.

The various attacks on the validity of the assessment, as made by the bill, are summarized on the brief filed by complainant in this court, and we have found it convenient to consider the bill as thus summarized, rather than by specific reference to the formal assignments of error.

(1) It is first contended that the organization of the Drainage District is void because proceedings and orders essential to its legal existence were had in the county court on days when the court was not and could not have been lawfully opened.

The District was organized by the county court under the provisions of the Acts of 1909, chapter 185, and amendments thereto.

Section 15 of this act requires the county court clerk to keep a full and complete record of all proceedings incident to the organization and development of a drainage district, including all orders made by the county court, in a separate record book, provided for the purpose and known as the "Drainage Record."

This provision of the statute was complied with by the County Court Clerk of Fayette County, so that the proceedings with respect to the Drainage District are not entered on the regular minute book of the county, and certain conflicts with respect to the adjourning orders appear in the two record books. As an instance of this conflict, the Drainage Record recites that the court was opened pursuant to adjournment on February 19, 1920, on which day the order was entered creating and organizing the District. The regular minute book of the county court recites that the county court was adjourned on February 16, 1920, until February 20, 1920.

The Chancellor held that if such conflict should be deemed material, the entry on the regular minute book could not be held to control the entry of the Drainage Record that the court was opened on February 19th, "pursuant to adjournment," and that the conflict would be resolved in favor of the validity and regularity of the proceedings entered on the "Drainage Record."

This holding of the Chancellor is attacked as placing a strained construction on the recitation of the order; and it is urged that litigants had a right to rely on the recitation of the regular minutes that the court was adjourned to a day certain, and that no orders would be entered in the meantime. This argument is rendered ineffective, in so far as the essential orders are concerned, by which the District was established and the assess-

ments apportioned, by the fact that these orders were entered on a day fixed in a notice by publication, as required by statute.

(2) We are of the opinion, moreover, that the orders of the county court must be sustained as valid, under the provisions of the Acts of 1911, chapter 3, that the county court held by the county judge or chairman, in the several counties authorized to elect a county judge or chairman, "shall be deemed always open for the transaction of any business and the exercise of any jurisdiction conferred upon the County Judge or Chairman or upon the monthly courts held by him under the existing laws." This act is assailed as unconstitutional on the ground that its caption was amended after it had passed two readings in the House of Representatives, by the addition of the words "or chairman," which had not been a part of the caption when it was placed on first and second readings in the House. .

It is contended that the amendment materially added to the scope of the bill, and that, therefore, the bill should have been passed on three readings after amendment, as held in *State ex rel.* v. *Baseball Club,* 127 Tenn., 292.

A statute should be given that construction which will save it, rather than one which will destroy it, when the language used is susceptible to such construction. The language of the caption "the county courts held by the county judges" may well have been used to designate the monthly court as distinguished from the quarterly county court, and given this interpretation, we think the caption before amendment would have been sufficient to support the body of the act as finally passed.

(3) By the Act of 1875, chapter 70, abolishing the *quorum* court in the several counties, and vesting the

powers of that court in the county chairman, it is provided: "and said Chairman is further invested with all the powers, and with the same jurisdiction, and authority wherewith county judges are now invested."

There is no distinction in our statutes between a county court presided over by a county judge and a county court presided over by a chairman; and the monthly county court is frequently referred to in the decisions of this court as "the court held by the county judge or chairman." The phrase is descriptive of the court, distinguishing it from the quarterly county court. So, we think a statute vesting jurisdiction in "the county court held by the county judge" would confer the same jurisdiction upon the county court held by a chairman.

(4) We also agree with the learned Chancellor in his construction of section 6006 of Shannon's Code (Acts 1875, chapter 70), which directs the chairman of the county court to attend at the courthouse on the first Monday of each month "and such subsequent days as may be necessary." The Chancellor declined to construe the phrase "such subsequent days" as limited to days immediately succeeding the first Monday, and said: "When the character of the jurisdiction of the Chairman is considered, the necessity of the exercise thereof on any day of the month is apparent."

This jurisdiction is noted in *Johnson v. Brice*, 112 Tenn., 59, 67.

On this point the Chancellor further said: "Under the Statute, it was just as imperative that the Chairman attend on subsequent days of the month, when necessary, as it is that he attend on the first Monday. As to the sessions of the Court, if the Chairman adjourns, not to a future day certain, and the minutes of a future session

show 'Court met pursuant to adjournment,' then such session would be deemed an *'adjourned'* session; if he adjourns to a particular future day, the session on such day would, of course, be an *'adjourned'* session; if he adjourns to a particular future day and prior to such day it becomes necessary to hold Court, such session would be regarded as a *'special'* session. Thus there may be a 'regular, special or adjourned session' of the monthly Court as contemplated by the Drainage District Act of 1909.''

The statutes provide for the calling of special sessions of the quarterly county court, upon notice. There is no provision for the calling of a special session of the county court held by the county judge or chairman. The Drainage Statute, Acts 1909, chapter 185, provides that the powers vested in the county court by such act may be exercised "at any regular, special or adjourned session." The construction placed by the Chancellor upon section 6006 of Shannon's Code seems to us, therefore, to be inherently correct.

*(5)* The bill next avers that the county court failed to adjudicate the necessity for the organization of the District; that this omission is jurisdictional, in the absence of which the entire proceeding in the county court is void.

This contention is predicated upon the provisions of section 6 of the Drainage Act (Acts 1909, chapter 185), which provides that, upon the hearing of the petition for the organization of the district "if the court should find such improvement conducive to the public health or welfare, or to the public benefit or utility, it shall determine and adjudge the necessity therefor of such levee or drainage district.''

Section 1 of the act provides that the District may be organized, "whenever the same will be of public utility or conducive to the public health or welfare and as hereby provided."

. Section 8, contemplating a hearing in the county court after viewers have reported and the court has considered the amount of damages claimed and to be awarded, provides as follows: "and if in its judgment the probable costs of construction is not a greater burden than should be properly borne by the land benefited by the improvement, and the improvement is conducive to the public health or welfare, or to the public benefit or utility, then the court shall locate and establish such drainage or levee district by proper order or judgment to be entered of record."

The requirement of section 6 that the court shall adjudge the necessity of the proposed district is made a condition precedent to the appointment of viewers to report on claims for damages; and this determination and adjudication of the necessity of the improvement is required if the court is of the opinion that the improvement will be conducive to the public health or welfare, or to the public benefit or utility.

When the viewers have reported, the case then stands for a final adjudication as to whether the district shall be established; and its establishment is then required by the provisions of section 8, if the court shall find that the probable cost of construction is not a greater burden than should be properly borne by the land benefited, and that the improvement is conducive to the public health or welfare, etc.

It is provided in section 6 that if no claims for damages are filed at the hearing of the petition on the report

of the engineer, the court may at that time locate and establish the district. If the district is then established it must be upon the conditions prescribed in section 8, that the probable cost will not be a greater burden than should be properly borne by the land benefited, and that the improvement will be conducive to the public health or welfare, or to the public benefit or utility.

It seems to us that a judgment of the county court reciting that the court found that the proposed improvement would be conducive to the public health and welfare, and that the probable cost would not be greater than should be properly borne by the land benefited, wherefore the district is ordered to be established, is a sufficient adjudication of the necessity for the District to meet the requirements of the statute.

These matters were adjudged by the county court in the order establishing the District, in express terms; and the court further adjudged that the establishment of the District would result in the transition of swamp lands, of little value and producing malaria and unhealthy conditions, into valuable agricultural lands, greatly increasing their value and promoting the public welfare and public health.

We, therefore, find no jurisdictional defect in the order of the county court establishing and creating the District.

(6) It is next contended that the notice by publication of the hearing on petition to establish the District, in so far as it was published in Shelby County, was fatally defective in that it was captioned "in the County Court of Lafayette County, Tennessee," instead of "in the County Court of Fayette County, Tennessee."

This notice, in its body, described the proceedings as in the County Court of Fayette County at Somerville,

and was signed by the clerk of the County Court of Fayette County.

There is no county in Tennessee known as Lafayette, and it seems to us that the caption, notwithstanding the error, would have unerring[ly] challenged the attention of any interested person as referring to Fayette County; and reference to the body of the notice would have demonstrated the slight error of the caption. The criticism of the published notice seems to us to be insubstantial.

The same may properly be said, we think, of the criticism of the notice by publication of other steps in the proceeding, wherein the District was referred to as the "Beaver Dam Creek Drainage District No. 1 of Fayette, Shelby and Tipton Counties, Tennessee," instead of "Beaver Dam Drainage District of Fayette, Shelby and Tipton Counties, Tennessee," the designation authorized by order of the county court.

No claim is made that complainant or his predecessor in title was in anyway misled or deceived by the inaccuracies of the publication.

In *Obion County* v. *Davidson,* manuscript opinion filed at the April term, 1925, this court said: "Objection to the notice on the ground of insufficiency cannot be made for the first time in an action to enforce payment of delinquent assessments."

The same ruling should be made with regard to an objection on the ground of insufficient notice of proceedings subsequent to the establishment of the District, made for the first time in a proceeding instituted after the assessment has been made final in the county court.

(7) A number of averments of the bill are directed at defects and irregularities in the notice by publication

given by the directors to prospective bidders for the contract to construct the levee or drainage system.

We are of the opinion that irregularities in letting of such contract cannot affect or impair the legality and validity of the assessments on the lands benefited. The assessments were made to create a fund for the retirement of bonds, the proceeds of which were presumably used for the benefit of the District. The bondholders and other creditors of the District should not be held responsible for defaults of the directors in the expenditure of this money, unless it should be shown that such bondholders or creditors participated in such defaults. If the contract was not let according to law, the contractor might be held to a *quantum meruit* compensation for services rendered the District, at the suit of interested parties, but this would not affect the legality of the assessment in a suit between the landowner and the District.

We think the foregoing is a sufficient reply to the further contention of the bill that the contract let by the directors was void because it was let before there had been an apportionment of assessments by the commissioners appointed by the county court.

It appears from the record that all of the lands included within the District were considered by the commissioners, appointed to apportion the assessments, as benefited in equal degree, with the exception of six tracts, which were reported as receiving no benefits at all. As a result each acre of land within the District was assessed alike.

It is averred by the bill that the action of the commissioners in so apportioning the assessments and benefits was, on the face of the record, "so arbitrary and so violative of all equitable principles governing assess-

ments as to constitute legal fraud and to render their apportionment of benefits void and of no legal force or effect."

There is no averment of the bill that any other lands in the District were benefited to a greater extent than the land of complainant; so that it does not appear whether, if the report of the commissioners amounted to a legal fraud, the fraud resulted to complainant's injury or advantage.

(8) We do not think the record justifies the inference of fraud made by the bill, nor do we think the question open for review in this proceeding. The landowners, including complainant and his predecessor in title, had the right of appeal from the order confirming the report of the commissioners; and having failed to appeal to the circuit court, the assessment or apportionment was not thereafter open for review. *Obion County* v. *Coulter,* 153 Tenn., 469, 494.

(9) It is further averred that the final assessment roll, fixing the amount assessed against each acre or tract of land in the District, was void because prepared by the directors, who were essentially interested in the District, while the statute requires that it be made by commissioners, required to be disinterested.

This contention was urged upon the court as invalidating the assessment under consideration in *Obion County* v. *Davidson, supra,* at the April term, 1925, the record showing that the assessment rolls in that case had been prepared by the directors and submitted to the county court. This court overruled the objection to the assessment, holding it to be sufficient that the county court adopted the assessment roll so prepared and tendered.

The record in the present cause is stronger in favor of the validity of the assessment roll so adopted than the record in the case cited, since the decree of the county judge recites that it appeared to the court that no parcel of land was assessed in a sum greater than the benefits it would receive from the improvement, and that no parcel of land was assessed more or less than its proportionate share of the cost of the improvement.

(10) It is next averred that the assessment on complainant's land was invalid because the land assessed is insufficiently described on the assessment roll.

The description of the land is given by boundaries. It is averred that complainant owns a single tract of about 900 acres, and that 589 acres of this tract are assessed, and that the reference to the boundaries is insufficient to designate the particular acreage on which the assessment was made.

The order of the county court establishing the District fixes the boundaries of the District by survey. The assessment roll must be read with reference to the order or decree fixing the boundaries of the District, and the assessment must be considered as having been made upon that portion of complainant's larger tract of land included within the District. There is no averment in the bill that the boundaries of the District cannot be easily located. It seems to us, therefore, that the description on the assessment roll sufficiently identifies that part of complainant's land which lies within the boundaries of the District as the land on which the assessment is laid.

(11) It is next averred that the assessment is void because it is not indicated thereon that the figures indicating the amount of the assessment were used to denote dollars, cents or other units.

The order of the county court authorizing the issuance of bonds by the District specified that bonds be issued in the sum of $105,000 and then directed that a contingent fund equal to ten per cent of the bond issue should be created, making a total sum to be raised by assessment on the lands of the District of $115,500. It was then directed in the same order of the county court that an assessment be laid upon the lands of the District to meet this amount, and the clerk was directed to make out an assessment roll for such assessment, showing in separate columns the particular tract assessed, the assessment, the administration fund, the aggregate or principal assessed against each tract, etc.

The assessment roll tendered by the directors and adopted by the court was prepared in substantial accord with the direction contained in the order of the county court. In the column showing the total cash assessment; that is the amount of the assessment if paid in cash, and not in annual installments; the grand total is given as "110,270/53," approximately the number of dollars required to be raised by the assessment, treating the last two digits, which are separated from the others on the assessment roll by a red line, as cents.

The court is of the opinion that the figures on the assessment roll must be considered in connection with the order of the court directing the preparation of the assessment roll, and the purpose for which the assessment roll was prepared; and when it is so considered there does not seem to be room for reasonable doubt that the assessment was made in dollars and cents.

(12) The remaining contention made by the bill is that the notice by publication of the hearing on the assessment and apportionment of benefits inaccurately referred to

the beginning of the District in Fayette County as on the land of "Richard Kendricks" instead of "Richard Hendricks."

We think this inaccuracy wholly immaterial in so far as complainant is concerned, since his land lay in Shelby County, and the error could only have misled persons whose lands lay in Fayette County near the beginning of the District.

The court is of the opinion that the bill of complainant offers no attack upon the organization of the District or the validity of the assessment which could result in relieving complainant's land from the assessment laid upon it.

The several assignments of error to the action of the Chancellor in dismissing the bill on demurrer are accordingly overruled, and the decree of the Chancellor affirmed.