Oil Co. v. Crain.

## GENERAL OIL COMPANY V. JOHN H. CRAIN.

## (*Jackson.* April Term, 1906.)

1. **CONSTITUTIONAL LAW.** Provision as to suits against the State is not self-executing.

 The constitutional provision that suits may be brought against the State in such manner and in such courts as the legislature may by law direct is not self-executing. (*Post, p.* 89.)

Constitution cited and construed: Art. 1, sec. 17.

Cases cited and approved: Williams v. Register, Cooke, 218; State v. Sneed, 9 Bax., 475.

2. **SAME.** Suit against the State's coal oil inspector to restrain inspection and collection of fees cannot be maintained, when.

 A bill in chancery against the State's coal oil inspector to restrain him from inspecting certain coal oil in the State sold or intended for sale in certain other States, and to restrain him from collecting the fees for such inspection, is a suit against an officer of the State acting by its authority, with a view to reach its funds or property, in the sense of the statute prohibiting such suits, and cannot, therefore, be maintained, and will be dismissed upon demurrer, though the bill claims that such oil is not subject to inspection, and if so, the statute authorizing the inspection is unconstitutional.

Code cited and construed: Sec. 4507 (S.); sec. 3507 (M. & V.).

Acts cited and construed: 1873, ch. 13; 1889, ch. 349.

Constitution cited and construed: Art. 2, sec. 28.

U. S. constitution cited: Art. 1, sec. 8.

Cases cited and approved: Williams v. Register, Cooke, 218; State v. Sneed, 9 Bax., 472.

Oil Co. v. Crain.

Cases cited and distinguished: Fry v. Britton, 2 Heis., 606; John-
son v. Hacker, 8 Heis., 388; Burch v. Baxter, 12 Heis., 601;
Publishing Co. v. Burch, 12 Heis., 607; State, ex rel., v. Gaines,
4 Lea, 352; Lynn v. Polk, 8 Lea, 121.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
F. H. HEISKELL, Chancellor.

TURLEY & TURLEY and H. J. LIVINGSTON, JR., for com-
plainant.

ATTORNEY-GENERAL CATES and THOMAS H. JACKSON,
for defendant.

MR. CHIEF JUSTICE BEARD delivered the opinion of the
Court.

The complainant is a corporation chartered under the
laws of Tennessee, with its *situs* in Memphis, in this
State, and the defendant, Crain, is a resident of Shelby
county and the duly appointed, qualified, and acting in-
spector of coal oil and other illuminating fluids for that
county, under and by virtue of chapter 349, p. 811, of the
Session Acts of 1899 of the legislature of Tennessee.

The bill alleges that complainant is the owner of

oil wells and refining plants in the States of Pennsylvania and Ohio, and for several years prior to the institution of this suit had been engaged in the manufacture, shipment, and sale of coal oil and other illuminants, and in carrying on this business it used Memphis not only as a place for the sale of its oils to the citizens thereof, but also as one of its distributing points, to which it shipped the product of its wells and plants in railroad tank cars, from which the oil was unloaded and then placed in various vessels for shipment to complainants' customers in Arkansas, Louisiana, and Mississippi.

The bill further alleges that complainant has, at its place of business in Memphis, numerous tanks of oil among which are two described as follows:

"(1)   A tank or vessel in which complainant constantly keeps, and will keep, and in which there now is, only oil for which orders have been received from customers of complainant in Arkansas, Louisiana, and Mississippi, before said oil was shipped from complainant's plants in Pennsylvania and Ohio, and which was shipped especially to fill said orders.   This oil is unloaded in Memphis from the railroad tank cars solely for the purpose of distribution into smaller vessels, or receptacles, to meet the requirements of said orders, and said oil is, and has always been, kept wholly separate and distinct from other oils and fluids of complainant in the State of Tennessee, in a tank plainly and conspicuously marked, 'Oil already sold in Arkansas, Louisiana, and Mississippi;' and, of course, complainant has sold, and

Oil Co. v. Crain.

will sell, none of this oil in the State of Tennessee, since the same has already been sold to customers in Arkansas, Louisiana, and Mississippi; in fact, this oil has remained, and will remain, in Shelby county, in the State of Tennessee, only long enough to be properly distributed, and reshipped, according to the orders therefor, whereupon it will proceed at once upon its journey to the various places in the States of Arkansas, Louisiana, and Mississippi, from which said orders were received. This will be only a few days.

"(2) In another tank or vessel, at its place of business in Memphis, complainant has now and constantly keeps, and will keep, only oil shipped from Pennsylvania and Ohio for sale in the States of Arkansas, Louisiana, and Mississippi, but for which complainant has no orders on hand from said States at the time of such shipments. This oil, as soon as it reaches Memphis in the railroad tank car, is placed in said tank or vessel, which is plainly and conspicuously marked, 'Oil to be sold in Arkansas, Louisiana, and Mississippi,' and is there kept wholly separate and apart from all other oil, until required to supply orders received from complainants' Arkansas, Louisiana, and Mississippi customers; and complainant never sells or offers for sale any oil from this tank except upon orders from Arkansas, Louisiana, and Mississippi, upon receipt of which complainant ships said oil to the persons sending said orders."

With regard to these tanks, which are thus designated Nos. 1 and 2, it is alleged that, at the time of the filing

of the bill, as well as for a period of time previous thereto, they contained "and will hereafter contain only oil as above described, unmixed with oil held for any other purpose, and that complainant has never placed in either of said tanks any oil other than as above described, nor has complainant ever sold, or offered to sell, oil from these tanks except in the manner and to the persons above mentioned."

It is further alleged that the defendant, Crain, in his official capacity is engaged in the inspection of oil and other illuminating fluids, of complainant's in Memphis, receiving for such inspection a fee of twenty-five cents per barrel, as provided by section 8, p. 814, c. 349, of the Acts of 1899, already referred to, and that he was then claiming the right under the provision of that act to inspect the oil in tanks Nos. 1 and 2, and was in the act of exercising this right, although it had been separated in the manner above alleged.

The complainant then charged "that none of the oil now in, or to be placed therein hereafter, is subject to inspection under the Tennessee law, and that the defendant, Crain, has no right or power to inspect any of said oil or collect fees for such inspection for the following reasons: '(1) Because none of said oil is covered by the language or intention of the act referred to, which is the present coal oil inspection law of Tennessee. (2) If, however, said act, when properly construed, provides for the inspection of the oil in either of said tanks'" then it is alleged that, in so far as it has that

effect, it is unconstitutional and void because a regulation of interstate commerce in violation of section 8 of article 1 of the constitution of the United States.

It is also further charged that if the act of 1899 be held to apply to any of the oil in these two tanks, then it cannot be sustained as a valid exercise of the police power: (1) Because an inspection of these oils was unnecessary to protect either the residents of Tennessee or the reputation of the manufactured products of this State. (2) The inspection fee provided by the act was unreasonable in that it was much greater than was necessary to provide for the expense of inspection. (3) That as an inspection of these oils would in no way conduce to the health, happiness, morals, or safety of the citizens of the State, the inspection fee so imposed was a mere tax under the guise of a police regulation and as such was in conflict with article 2, section 28, of the constitution of Tennessee, which requires uniformity of taxes throughout the State.

The bill alleged, as an excuse for coming into the chancery court, asking for a decree adjudging its *status* as to the oil in these two tanks, and invoking its protection in the form of injunctive relief, the peril complainant would incur, under the act of 1899, in obstructing the coal oil inspector in the discharge of his duty, and in selling the oil in these tanks whether the inspection fees, if paid under protest, could be recovered by the complainant, or if this could be done, it was alleged this would only be bringing, within thirty days after

each payment, a suit for recovery thereof, thus neces-
sitating an indefinite number of suits.

The bill was demurred to, among others, upon the
ground that that this was a suit in fact, though not in
name, against the State, and therefore could not be main-
tained. The chancellor overruled this ground of de-
murrer, no doubt resting his decree on this point on
the authority, now relied on to support his action, of
*Fry* v. *Britton,* 2 Heisk., 606; *Lynn* v. *Polk,* 8 Lea, 121.

The first of these was decided in 1870. From the opin-
ion in the case it appears that a judgment had been
taken in a summary proceeding against Fry, a delin-
quent tax collector, and a portion of his sureties; there-
after a bill was filed by the sureties against the district
attorney-general and the sheriff to enjoin them from col-
lecting this judgment, and a decree was passed granting
this relief.

During the December term, 1870, of this court the at-
torney-general of the State presented the record for writ
of error. His application, however, was declined, the
court holding, among other things, that, as the State was
not a party to the suit in name, it was not entitled to
assign errors.

Another branch of this case, under the style of *John-
son* v. *Hacker,* reached this court in 1872, though only
decided in 1874, and an opinion published in 8 Heisk.,
388, as the result of which, without being a party to the
suit, the State's claim against a defaulting revenue col-
lector and his sureties was finally adjudicated against it.

It is said to be a part of the legislative history of the State that this litigation produced chapter 13, p. 15, of the Acts of 1873, which is section 4507 of Shannon's Code, and provides as follows: "That no court in the State of Tennessee has, nor shall hereafter have, any power, jurisdiction or authority to entertain any suit against the State, or any officer acting by the authority of the State, with a view to reach the State, its treasury, funds, or property, and all such suits now pending, or hereafter brought, shall be dismissed as to the State, or such officer on motion, plea or demurrer of the law officer of the State, or counsel employed by the State."

It is axiomatic that the State, as a sovereign, is not subject to suit save by its own consent. The constitution of 1870 provides, as did the two earlier constitutions of Tennessee, that "suits may be brought against the State in such manner and in such courts as the legislature may by law direct." This provision, however, is not self-executing. *Williams* v. *Register*, Cooke, 218; *State* v. *Sneed*, 9 Baxt., 475.

Under the constitution of 1796, and when there was no statute giving authority to bring suit against the State, a petition for mandamus was filed in the circuit court to compel the register of West Tennessee to issue a warrant entitling the holder thereto, but the court declined the writ upon the ground that, in effect, the proceeding was against the State, and in the absence of a statute providing for suits against the State, the courts were without jurisdiction. *Williams* v. *Register*, supra.

Although the legislature, at that time, had seen proper not to put this clause of the constitution into effect, yet its silence was regarded as being as complete an answer to the demand of the petitioner as if it had positively forbidden all interference with the State's officers or affairs. The act of 1873 in unmistakable terms has announced as the policy of the State that "no court shall hereafter have . . . jurisdiction . . . to entertain any suit against the State, or any officer of the State acting by authority of the State, with a view to reach . . . its treasury, funds or property." If, without a statutory bar of this sort in *Williams* v. *Register,* supra, the court declined to interfere with the property of the State when its officer was sued, how much more shall it hesitate in the face of this statute when its claim to this inspection fee is assailed in the person of the representative whose duty it is to collect the same if due? For if the act in question is constitutional, then this is an effort to reach that which is, or is claimed by the State to be, its funds or property. If *Fry* v. *Britton* is authority for the present contention, then we think it will be difficult to assign any reason for the act of 1873, or to name any good it has accomplished.

We are satisfied, however, that this statute is ample in its operation to do what the legislature intended in its passage, and that now the funds or property, actual or *prima facie,* of the State cannot be made the subject of litigation in its courts either by making it a party

directly or indirectly by suing one of its officers, save where it has given its consent by express legislation.

In *State* v. *Sneed,* 9 Baxt., 472, decided in 1876, an effort was made to secure a peremptory mandamus requiring a tax collector to receive from the relator notes of the Bank of Tennessee in payment of taxes for the year 1872, but it was held that the act of 1873 was a bar to the jurisdiction of the court.

It is true that in *Burch* v. *Baxter,* 12 Heisk., 601; *Publishing Co.* v. *Burch,* Id., 607; *State, ex rel. Uhl,* v. *Gaines,* 4 Lea, 352, and other like cases decided since this act, the process of mandamus has been awarded against the comptroller to compel him to issue warrants to parties having claims against the State allowed by law. In these cases, the statute was not adverted to and evidently for the reason that the proceedings were not regarded as within its scope. While in all of them the effort was to reach funds of the State, yet it in some legislative form had recognized the claims in question, and expressly or by implication imposed the duty upon the comptroller of issuing warrants in satisfaction of them to the respective claimants. In other words, the officer of the State had nothing but a ministerial duty to perform. As is well said by McFarland, J., in *Lynn* v. *Polk,* supra, the act of 1873 "would certainly not be construed to deprive the court of jurisdiction to compel a ministerial officer to perform a plain ministerial duty; and when the demand of the relator is allowed by law it

is the plain ministerial duty of the comptroller to issue his warrant."

This being so, we do not think this line of cases would support the present contention even if their authority had been invoked by complainant.

But, as has already been stated, the right of the court to exercise jurisdiction in this case is also rested on *Lynn* v. *Polk*, supra. It is unnecessary to state the nature of the controversy there involved. It is sufficient to say that the bill of complainants was there maintained on the ground that the act under which the defendants, the funding board of the State, were proposing to act, was void for unconstitutionality.

This case, however, cannot be appealed to as authority by complainant save upon the ground that the act of 1899 is unconstitutional. The question is, is this true?

It will be observed from the allegations of the bill hereinbefore set out, the gravamen of the complaint is that the defendant, Crain, is proposing to inspect and charge inspection fees as to oil "neither manufactured nor offered for sale in the State" within the purview of the act of 1899, and it is only, should a construction otherwise be adopted, that the question of its constitutionality is raised. In other words, if complainant's main contention is sustained, that is, that the oil in tanks Nos. 1 and 2 does not fall within the letter or intent of the act, the constitutionality or unconstitutionality is of no concern to the General Oil Company, and we would have presented in the record a pure academic

Oil Co. v. Crain.

question for consideration. It needs no citation of authority to the proposition that a court will not entertain such controversy.

The only question made on the face of the statute going to its constitutionality is, that the inspection fee of twenty-five cents a barrel is unreasonable and much greater than necessary to provide for the expense of such inspection.

This question is of no concern, however, to complainant unless it be, as charged in the bill, that the oil, upon which defendant was about to impose inspection fees, was, in law, affected with interstate commerce. For it is only in the character of one engaged in such commerce that the objection is made. To answer this question, the court would be bound first to determine whether the oil in these tanks was in fact and in law, as claimed by complainant, a part of interstate commerce, and to do this, we would be bound to hold, and proceed upon the theory, that the court had jurisdiction of the whole controversy. This, we are satisfied, we cannot do.

This court, therefore, does what the chancellor should have done, sustains this ground of demurrer going to the question of jurisdiction, and dismisses the bill at the cost of complainant.

It appearing, however, that a fund may have accumulated in the present case pending this litigation in the court below, and in this court, from payments made by the complainant, the cause is remanded to the chancery court in order that a disposition thereof may be made by that court.