STOCKTON *et al. v.* MORRIS & PIERCE.

(*Knoxville,* September Term, 1937.)

Opinion filed Nov. 27, 1937.

Roy H. Beeler, Attorney-General, and Kennerly & Key, of Knoxville, for George L. Stockton et al.

Joe C. Thomason and S. E. Hodges, both of Knoxville, for Morris & Pierce.

Mr. Justice Chambliss delivered the opinion of the Court.

Morris & Pierce is a partnership handling tobacco products at wholesale. Stockton and Dossett are employees in the Department of Finance and Taxation of this state, who, while engaged on February 9, 1937, in enforcing collection of revenue under chapter 58 of the Pub. Acts of 1933 and chapter 46 of the Acts of Extra Session of 1935, seized on the premises of Morris & Pierce, in Knoxville, as contraband a quantity of tobacco to which no state revenue stamps had been affixed. Thereupon this suit in replevin was brought by Morris & Pierce and, on the *fiat* of the circuit judge, the tobacco was restored to their possession. A declaration was filed alleging ownership and a value of $3,295.04; that they had been duly licensed, and were proceeding lawfully in all particulars; that, while the particular lot of tobacco had not been stamped when seized, there had been no purpose to evade the tax, but that their employees were busily engaged in affixing stamps to all such goods as received; that this particular lot had just

arrived by shipment from beyond the State and had not been stamped only because they had not been in the warehouse a sufficient time; that they assured the defendants of their good faith and purpose to comply with the law and offered to do so if given opportunity; that nevertheless and wrongfully the goods were seized and taken from them for confiscation. It was further charged that the act of 1933, carried into Williams Code as sections 1242.1 and 1242.2, and the amendatory act of 1935, chapter 46, by virtue of which the defendants asserted the right to seize and confiscate these tobacco products without notice or opportunity for hearing of any kind, were unconstitutional, and void and afforded no lawful authority to these parties so to proceed; that these enactments violated section 8 of article 1 of the State Constitution, and the Fifth and Fourteenth Amendments to the Federal Constitution, particularly in that they purported to authorize employees of the Department of Finance. and Taxation to seize and confiscate tobacco products without providing any mode, method, or procedure by which the owners of the property might be heard; that they failed to provide for any notice and hearing and adjudication in any court or tribunal where the owners might have opportunity to make a showing or present evidence in their behalf.

The defendants first interposed a motion to dismiss on the ground that the suit was one against the state and that the circuit court was without jurisdiction, and followed this defense with a demurrer on substantially the following grounds:

"First: That this was an action against The State, and that the Court was without jurisdiction to try it;

"Second: That there was no property right or right

of possession to such tobacco products in the plaintiffs because the same did not bear stamps;

"Third: Because plaintiffs' rights, if any they had, were only by way of petition for a writ of *certiorari* in the Chancery or Circuit Court;

"Fourth: That Chapter 58, Acts of 1933, and Chapter 46, Special Session, Acts of 1935, were constitutional and valid."

Pending the proceedings, the defendants, by agreement and without prejudice, paid into the registry of the court $3,295.04, the appraised value of the tobacco, to await the determination of the suit.

The trial judge overruled the motion and demurrer and entered judgment for plaintiffs. Defendants appealed.

Two questions are presented by plaintiffs in error: First, it is said that the suit is one against the state and may not be maintained because of inhibitions found in the State Constitution, article 1, section 17, providing that, "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct," and Code, section 8634, (which originated with the act of 1855), providing as follows:

"No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state."

Second, that the acts challenged are constitutional and afford authority for the seizure and confiscation.

Counsel for plaintiffs in error rely for the first

insistence on the well-recognized general rule that the state cannot be sued in its own courts without its own consent, a rule announced in *State* v. *Bank of Tennessee*, 62 Tenn. (3 Baxt.), 395, 398; *State* v. *Sneed*, 68 Tenn. (9 Baxt.), 472, 473, and other early cases since followed. Counsel cite particularly as so construing the constitutional provision, or the statute, or both, *Insurance Co.* v. *Craig*, 106 Tenn., 621, 62 S. W., 155, 157; *Quinton* v. *Board of Claims*, 165 Tenn., 201, 54 S. W. (2d), 953; *Phillips* v. *Marion County*, 166 Tenn., 83, 85, 59 S. W. (2d), 507; *Peerless Construction Co.* v. *Bass*, 158 Tenn., 518, 14 S. W. (2d), 732; *Walters* v. *State*, 2 Shan. Cas., 69; *Riddle, Coleman & Co.* v. *State*, 3 Shan. Cas., 529; *State* v. *Odom*, 93 Tenn., 446, 25 S. W., 105; and *General Oil Company* v. *Crain*, 117 Tenn., 82, 95 S. W., 824; Id., 209 U. S. 211, 28 S. Ct., 475, 52 L. Ed., 754. Reliance is placed on the dissenting opinion of MR. JUSTICE HARLAN in the last styled case.

However, we are not of opinion that these cases following the general rule have controlling application here for two reasons:

First, to quote from the opinion of CALDWELL, J., in *Insurance Co.* v. *Craig*, above cited, "This is not a suit against the state *eo nomine*, nor is it a suit against an officer of the state in such sense and for such purpose as to be within the inhibition of the statute. It is a suit against the officer of the state, the defendant being that state's official representative, . . . but it is not brought 'with a view to reach the state, its treasury, funds, or property,' and consequently is not of the inhibited class." This language is even more directly applicable in the instant case than to the facts of the case in which it was employed. This suit in replevin seeks to

recover possession of property of the plaintiffs below to which neither the state nor its employees assert any claim of ownership or of possession, except the right of confiscation.

██ ██ Second, by its express terms, the inhibition of the statute has application only when the "officer of the State [is] acting by authority of the State," and, by the great weight of authority, "an officer while executing an unconstitutional act, is not acting by authority of the State." This distinction was recognized in the memorable state debt case of Lynn v. Polk, 76 Tenn. (8 Lea), 121, from which the above quotation is taken, in which each member of the court wrote an opinion. In that case the right to enjoin the execution of the measure by the designated state officials was challenged on the ground relied on here, that the suit was one against the state. While differing among themselves on certain other questions considered, it is noteworthy that the four regular justices of the court, TURNEY, McFARLAND, FREEMAN, and DEADERICK, C. J., (who thought the act constitutional) all agreed that a suit to enjoin action under the authority of an unconstitutional act could be maintained. The great Chief Justice thus tersely expressed himself: "The Court may inquire if there exists legal authority for the act; if so, it will not impede or obstruct it. On the other hand, if it appears it is prohibited by the fundamental law, it should restrain it—upon the ground that the injurious act about to be done is unauthorized by law."

The rule is thus stated in Supreme Court Law (Honnold), p., 2332:

"A suit against individuals, for the purpose of preventing them, as officers of a state, from enforcing an

unconstitutional enactment to the injury ·of the rights of the plaintiff, is not a suit against the state.''

Ruling Case Law (volume 25, page 413), sets out the general rule invoked by plaintiffs in error and the exception applicable, we think, to the instant case, in these words:

''The immunity of a state from suit is absolute and unqualified, and the constitutional provision securing it is not to be so construed as to place the state within the reach of the process of the court. Accordingly, suits against officers of a state as representing the state in action and liability, where the state, although not a party to the record, is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the defendant as an individual, could operate to control the action of the state or subject it to liability, are suits against the state. The rule does not, however, afford immunity to an officer where the action is for relief against statutes claimed to be unconstitutional.''

And see, to the same effect, 59 C. J., section 465, at page 310; Tennessee Procedure in Law Cases, section 309, p. 110. This terse statement is made by the annotator in 43 A. L. R., p. 408: ''A suit against state officers attacking the constitutionality of a statute of the State is not a suit against the State.''

The courts of other states take the same view. For example, *White Eagle Oil, etc., Co.* v. *Gunderson,* 48 S. D., 608, 205 N. W., 614, 43 A. L. R., 397; *Dennison Manufacturing Co.* v. *Wright,* 156 Ga., 789, 120 S. E. 120; *Coal & Coke Railway Co.* v. *Conley,* 67 W. Va., 129, 67 S. E., 613; *Bonnett* v. *Vallier,* 136 Wis., 193, 116 N. W., 885, 17 L. R. A. (N. S.), 486, 128 Am. St. Rep., 1061;

*State ex rel.* v. *Superior Court, etc., et al.,* 182 Wash., 277, 46 P., (2d), 1046. And so the United States Supreme Court. *Pennoyer* v. *McConnaughy,* 140 U. S., 1, 11 S. Ct., 699, 35 L. Ed., 363; *Scott* v. *Donald,* 165 U. S. 58, 17 S. Ct., 265, 41 L. Ed., 632; *Public Service Co.* v. *Corboy,* 250 U. S., 153, 39 S. Ct., 440, 63 L. Ed., 905; *Ex parte Young,* 209 U. S., 123, 28 S. Ct., 441, 52 L. Ed., 714, 13 L. R. A. (N. S.), 932, 14 Ann. Cas., 764; *Traux* v. *Raich,* 239 U. S. 33, 36 S. Ct., 7, 9, 60 L. Ed., 131, L. R. A., 1916D, 545, Ann. Cas., 1917B, 283. We quote from the last styled case as follows:

"As the bill is framed upon the theory that the act is unconstitutional, and that the defendants, who are public officers concerned with the enforcement of the laws of the state, are about to proceed wrongfully to the complainant's injury through interference with his employment, it is established that the suit cannot be regarded as one against the state. Whatever doubt existed in this class of cases was removed by the decision in *Ex parte Young* [citation], which has repeatedly been followed."

Later decisions of the federal Supreme Court are in harmony with these holdings. See *Sterling, Governor, etc.,* v. *Constantin et al.,* 287 U. S., 378, 53 S. Ct., 190, 77 L. Ed., 375, decided in 1932.

The Tennessee cases relied on for plaintiffs in error are not, when analyzed, *contra.* The constitutionality of the acts involved was not in issue. We understand counsel for defendants in error to concede that, if in this case, as in those relied on for plaintiffs in error, the constitutionality of the authority of acting state representatives was unquestioned, then this suit could not be maintained.

■ It results from what has been said that the determinative question for consideration in the case before us is the constitutionality of the act of 1933, amended in 1935, brought into Williams Code in the sections above cited, specifically, whether or not these statutes provide for a hearing of the property owners at some stage of the proceedings. The position of defendants in error is thus stated on their brief:

"In the statute under consideration in the case at bar there is no hearing provided in any form or manner, nor does it provide for any judgment in any form or manner, nor any remedy for an appeal of any character from a mere capricious and arbitrary declaration of the Commissioner of Finance & Taxation that the terms of the statutes have been violated."

If this be true, then the act is invalid and no lawful authority supports the seizure of the goods involved. This is the rule recognized in numerous decisions of this court. See *Malone* v. *Williams,* 118 Tenn., 390, 103 S. W., 798, 121 Am. St. Rep., 1002; *Strong, Supt.* v. *State ex rel.,* 129 Tenn., 472, 166 S. W., 967; *Phillips* v. *Lewis,* 3 Shan. Cas., 230; *Tennessee Fertilizer Co.* v. *McFall,* 128 Tenn., 645, 163 S. W., 806; *Obion County* v. *Coulter,* 153 Tenn., 469, 284 S. W., 372. The opinion in the Obion County Case cites, 153 Tenn., 469, on page 494, 284 S. W., 372, numerous cases for the holding that where provision is made for notice to and a hearing of the property owner at some stage of the proceedings, it is due process of law, and, of course, the converse is true. In the late case of *Independent Life Insurance Co.* v. *Rodgers,* 165 Tenn., 447, 455, 55 S. W., (2d), 767, in which the action of the insurance commissioner in revoking an agent's license was challenged, the court conceded the

essentiality of a hearing upon notice, but, finding this provided for, sustained the authority of the commissioner.

The pertinent sections of the Act of 1933 read as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That all manufactured tobacco products, which are or shall be held, owned or possessed by any person, firm, corporation, joint stock association or syndicate in avoidance, evasion or violation of any of the provisions of the tobacco tax described in Sections 1213 to 1242 inclusive of the Code of Tennessee, 1932, are hereby declared to be contraband goods and the title thereto forfeited to the State and it shall be the duty of Commissioner of Finance and Taxation and/or any employee of Department of Finance and Taxation specifically deputized by Commissioner of Finance and Taxation to seize the same. No inspector or employee of Department of Finance and Taxation other than those specifically deputized may seize manufactured tobacco products declared to be contraband under provisions of this Section.

"Section 2. Be it further enacted, That the said Commissioner or his agent making the seizure, shall appraise the value of the same according to his best judgment as to usual and ordinary retail price of the articles seized, and shall deliver to the person, firm, corporation, joint stock association or syndicate, if any, found in possession of the same a receipt showing the fact of the seizure, stating from whom seized, the place of seizure, a description of the goods and the appraised value; and a duplicate of said receipt shall be filed in the office of the Department of Finance and Taxation and shall be open

to public inspection. A copy of said receipt shall be posted at the place of the seizure.

"Advertisement and sale of goods seized under the provisions of the foregoing paragraphs must be proceeded with as follows: Said Commissioner or his agent or representative must, within twenty days after such seizure, advertise said manufactured tobacco products for sale for cash, to the highest bidder, by written or printed posters posted at as many as two public places in the county where the property is to be sold, one at the courthouse door in the county, and one at any public place in the county, said notices to be posted at least ten days before the day of sale, and to contain a description of the property to be sold, and time and place of said sale.

"Sales shall be made by said Commissioner or his agent or representative at the courthouse door in the county in which the manufactured tobacco products were seized and sale shall be held within thirty days of the date of seizure.

"The proceeds of all such seizures after paying the costs and expenses thereof shall be paid by the said Commissioner into the State Treasury."

And the pertinent paragraph of the amendatory act of 1935 reads as follows:

"Any cigars, cigarettes, manufactured tobacco and/or snuff subject to the tax hereby imposed which shall be stored, used and/or consumed without payment of the tax herein provided for, are hereby declared to be contraband goods, and the title thereto confiscated to the State. Such contraband goods shall be subject to confiscation and seizure in the manner and under the conditions provided for the seizure of manufactured tobac-

co products by Chapter 58 of the Public Acts of 1933."

We are pointed to no provision in the acts before us, and can find none, for notice or hearing. If found unstamped, the goods are to be seized and confiscated summarily. Is provision for such notice and hearing elsewhere made?

Learned counsel for plaintiffs in error submit that Code, section 9008 *et sequi,* afford a remedy, and that provision is thereby made for a hearing for the property owner.

We do not so construe these sections of the Code. Comment thereon has been made by this court in several reported opinions since the adoption of the Code. In *Richardson* v. *Reese,* 165 Tenn., 661, 57 S. W. (2d), 797, in which an order of the commissioner of insurance was sustained revoking the license of an agent on the ground that the declaration of power by the Legislature was valid and that the order was made only after notice to the agent with opportunity for a hearing, MR. JUSTICE MCKINNEY remarked that by these sections of the Code a remedy was afforded the agent if the commissioner acted arbitrarily, fraudulently, or illegally. Obviously this holding lends no support to plaintiffs in error in the instant case, wherein there has been no hearing whatever and no order made as a basis for review. In the other four reported cases in which these sections of the Code have been commented on limitations upon the scope and purpose of these sections have been indicated.

In *Quinton* v. *Board of Claims,* 165 Tenn., 201, 54 S. W. (2d), 953, 958, denying the authority of the courts to review judgments of the Board of Claims in the absence of any statutory provision for what was in effect a suit to recover money from the state by way of dam-

ages for a road accident, MR. JUSTICE COOK repudiated the suggestion that these Code sections could be construed to open the way for court action under such circumstances, and in this connection clearly indicated that these Code sections do not open "for review *de novo* in the courts all proceedings before statutory boards and commissions."

In *Savage Co.* v. *Knoxville*, 167 Tenn., 642, 72 S. W. (2d), 1057, and *Anderson* v. *Memphis*, 167 Tenn., 648, 72 S. W. (2d), 1059, 1060, both cases in which it was sought to review by *certiorari* the action of boards of equalization of the cities of Knoxville and Memphis, respectively, in fixing the value of property for taxation, the charters providing that the action of these boards in matters of valuation should be final, it was held that these Code sections offered no relief. In the opinion in *Anderson* v. *Memphis* the limited effect of these statutes in various particulars was pointed out, it being said that "the sections of the Code cited were intended and are effectual only to prescribe the procedure to be followed in cases of review by *certiorari,* and that they do not have the effect of enlarging the scope of the writ in any case." And in *Fort* v. *Dixie Oil Co.*, 170 Tenn., 183, 93 S. W. (2d), 1260, 1263, in which writs of *certiorari* and *supersedeas* issued by the chancellor restraining the collection of taxes due to the state when the substance of the taxpayer's contention was that the tax levied was excessive, were quashed by this court, Chief Justice GREEN thus commented on these Code sections:

"The chancellor expressed the opinion that section 9008 *et seq.,* of the Code providing for review of actions of boards or commissions gave him authority herein.

We have indicated a contrary view in *Savage Co.* v. *Knoxville,* 167 Tenn., 642, 72 S. W. (2d), 1057, and *Anderson* v. *Memphis,* 167 Tenn., 648, 72 S. W. (2d), 1059. These sections are contained in article 5 of chapter 14 of the 1932 Code. In addition to what was said in the cases just mentioned, section 9014 by implication negatives the idea that the writ of *certiorari* here dealt with was intended to apply to revenue cases. The language of section 9014 is 'At the expiration of ninety days from the filing of said transcript, the cause shall stand for trial, and shall be heard and determined at the earliest practical date, as one having precedence over other litigation, except suits involving state, county or municipal revenue.'

"This seems to contemplate revenue suits as suits apart from proceedings under these sections of the Code."

The opinion thus expressed that these Code sections are without application to revenue cases we now reaffirm.

█ It is suggested in argument that the case before us is not a "revenue" case, but we think it cannot be otherwise classified. These stamps sold and required to be affixed to packages of tobacco are sold to raise revenue for the state, the sale of the stamps being merely a method of collecting taxes, and all of the proceedings attempted to be authorized for seizure and confiscation of unstamped tobacco are in furtherance of this purpose. And it will be observed that the concluding paragraph of Williams Code, section 1242.2, hereinbefore quoted, expressly provides that "The proceeds of all such seizures, after paying the costs and expenses there-

of, shall be paid by the State Commissioner into the State Treasury."

Moreover, a careful reading of sections 9008 and 9014 we think convinces that it was not intended that the proceeding authorized by these sections would apply to a situation such as we have before us, where it is conceded that the seizure complained of was without any sort of hearing before any board or commission. The subhead of section 9008 reads, "Mode of review of actions of boards or commissions." The opening lines of this section read, "Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have said order or judgment reviewed by the courts," etc. Clearly there must have been a "final order or judgment" of a board or commission before the remedy provided could be employed. And further down in the section, prescribing the matters to be set forth in the petition, it is required that the petition set forth "the substance of the order or judgment complained of, of the respects in which the petitioner claims the order or judgment is erroneous," etc. And in the next paragraph it is directed that the petition shall name as defendants the particular "board or commission, and such other parties of record, if such, as were involved in the hearing before the board or commission," etc. And yet again in 9014 it is provided that "the hearing shall be on the proof introduced before the board or commission contained in the transcript, and upon such other evidence as either party may desire to introduce." It thus plainly appears that the remedy provided by these Code sections was intended to have application only in a review

of an order or judgment rendered after a hearing before a board or commission.

For the reasons indicated, we are constrained to hold that the total lack of any provision in the act of 1933, and the amendatory act of 1935, for a hearing at any stage of the proceedings, is not supplied by the Code sections affording a review by *certiorari* in certain cases. It results that the act of 1933 must be declared invalid and the judgment of the trial court affirmed.