**MERCHANTS BANK, Plaintiff-Appellee,**

v.

**STATE of Tennessee, WILDLIFE RESOURCES AGENCY, Defendant-Appellant.**

Court of Appeals of Tennessee, Western Section.

Feb. 16, 1978.

Certiorari Denied by Supreme Court June 12, 1978.

Michael E. Terry, Asst. Atty. Gen., Nashville (Brooks McLemore, Jr., Atty. Gen., of counsel), for defendant-appellant.

Eddie L. Headrick, L. Harlen Painter, Bell, Painter, McMurray, Callaway, Brown & Mashburn, Cleveland, for plaintiff-appellee.

MATHERNE, Judge.

The issue at bar is the constitutionality of T.C.A. § 51–709, which purports to extend to owners and others who have an interest in property seized as contraband under the Fish, Game and Wildlife Resources Statutes the right to assert their interests in the seized property.

### I.

Officers of the Wildlife Resources Agency seized a 1976 Dodge Van owned by Gene Edward Vest, which was being used to transport a female deer in violation of T.C.A. § 51–425. Merchants Bank had a perfected security interest in the vehicle upon which there was a balance owing of $2,259.50.

After an administrative hearing the Executive Director of the Wildlife Resources Agency declared the vehicle to be contraband and ordered that it be sold as property of the state, depriving the bank of its interest therein. The bank filed its Petition for Review in the chancery court pursuant to T.C.A. § 4–523. After a hearing, the chancellor decreed:

"(5) The Tennessee State Legislature could not have intended by T.C.A. 51–707 and 51–709 for a secured lienholder with a perfected security interest to be deprived of its collateral without just compensation where the innocence of the lienholder from the acts which lead to the forfeiture is undisputed.

(6) The proper interpretation of the aforementioned conflicting Statutes is that while the State of Tennessee Wildlife Resources Agency is entitled to confiscate the contraband property and dispose of it pursuant to Statute, the State of Tennessee Wildlife Resources Agency must purchase the promissory note from the Merchants Bank by paying the amount of $2,259.50, including interest, plus attorney's fees of 15% or $338.93, and thereafter the Wildlife Resources Agency will be subrogated to all the rights and privileges of the Merchants Bank in said note and may proceed by Court action against Gene Edward Vest on said note."

The state appeals under one assignment of error: "The chancellor erroneously interpreted the wildlife forfeiture scheme and found a state obligation to protect the interests of innocent secured parties."

We first hold that under the record the vehicle was being used to transport a female deer in violation of T.C.A. § 51–425. After considering the record, the admissions of counsel in open court and their briefs, we also hold that Merchants Bank was innocent of any violation of the law or knowledge that Vest was or had been guilty of such violations which resulted in the seizure of the vehicle.

With those factual matters determined, we must consider the pivotal issue of the constitutionality of the statute as applied to the facts. The petitioner Merchants Bank alleged in its petition "(t)hat T.C.A. Section 51–709 is unconstitutional in that it fails to provide for fair and impartial hearing and this violates the claimant's right to due process of law." We conclude that the allegation as worded would justify a review based upon both the federal and state constitutions. We will, however, for the reasons hereinafter stated, restrict our review to the Constitution of the State of Tennessee.

## II.

The state relies heavily upon the decision of the Supreme Court of the United States in *Astol Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), wherein a yacht was seized under the statutes of Puerto Rico. It appears that the innocent lessor of the yacht made claim for its return. As we view the opinion, the Court held that (1) the lessor was not denied due process of law by the omission of statutory provisions for pre-seizure notice and hearing; (2) the lessor was not unconstitutionally deprived of its property without just compensation even though it was not involved in the criminal enterprise and had no knowledge that the lessee was so involved.

The appellee before this Court attempts to distinguish *Astol.* We do not so attempt, and we accept that decision as the law insofar as the Federal Constitution is concerned. We will rest our decision on the Constitution of the State of Tennessee and not fall into the error pointed out in *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), wherein the Court held that the Oregon Supreme Court based its decision on federal law because of its attempt to distinguish an earlier United States Supreme Court case from the *Hass* case then before the Oregon Court.

■ Admitting that under the Federal Constitution the appellee-claimant would have no rights at all, we will, subject to final review by the Supreme Court of Ten-

nessee, determine the appellee's rights under the Constitution of Tennessee. A state court can not under a state constitution restrict the rights of its citizens contrary to the rights granted by the Federal Constitution; but a state court can grant to its citizens broader and more comprehensive rights under the state constitution than as allowed by the Federal Constitution. See *Oregon v. Hass, supra; State v. Kaluna* (1974) 55 Haw. 361, 520 P.2d 51; *State v. Williams* (Tenn.1976) 547 S.W.2d 895, footnote 1.

### III.

The vehicle was seized under the provisions of T.C.A. § 51–707, which provides in pertinent part, as follows:

Any firearm, equipment, appliance or conveyance used in violation of the provisions of §§ 51–425—51–427 including any truck, automobile, boat, airplane, or other vehicle, other than a common carrier, and in which any deer, bear, or wild boar is located, or which is used in transporting such animals in violation of the provisions of this title, is hereby declared contraband property and shall be confiscated and forfeited to the state upon seizure.

\*   \*   \*   \*   \*   \*

Upon seizure, or as soon thereafter as practical, the executive director shall cause to be given written notice to the person from whom the seizure was made and to all others with a legal interest in the property seized who are either made known or who by a reasonable examination of public records of titles and liens should have been discovered. \* \* \*.

■ The sole remedy of a claimant for the recovery of property seized as contraband under T.C.A. § 51–707 is as provided in T.C.A. §§ 51–709 through 715. *State v. McCrary* (1959) 205 Tenn. 306, 326 S.W.2d 473; T.C.A. § 51–715.

As pertains to the recovery of the vehicle, we are here concerned with T.C.A. § 51–709 which provides, as follows:

Claim for seized property—Hearings—Hearing officer.—Any person claiming the property so seized as contraband property may, at any time within ten (10) days from the date of seizure, file with the executive director at Nashville a claim in writing requesting a hearing and stating his interest in the property seized. The executive director shall set a time and place for a hearing in the county in which the violation occurred or at any other place in the state of Tennessee in the discretion of the executive director within ten (10) days from the date the claim is filed. The executive director is hereby empowered to subpoena witnesses and compel their attendance at any hearing authorized under this title. All parties to the proceeding, including the person claiming such property, shall have the right to have subpoenas issued by the executive director to compel the attendance of all witnesses deemed by such parties to be necessary for a full and complete hearing. All witnesses shall be entitled to the witness fees and mileage provided by law for witnesses in the circuit and chancery courts, which fees and mileage shall be paid as a part of the cost of the proceeding.

The executive director is hereby authorized to appoint a hearing officer, who shall be a member of his staff, to conduct said hearings in the absence of the executive director and said hearing officer to serve upon designation by the executive director. The hearing officer shall make a written finding of fact and conclusions of the law together with his recommendation to the executive director. Thereafter if the director concurs, the executive director shall issue the necessary order together with his findings and conclusions as the record justifies. The executive director may also conduct such hearings as he may deem necessary and proper. At all hearings provided for herein, the executive director shall provide a stenographer to take a stenographic record of the evidence adduced at such hearing. The claimant shall be entitled to a copy of said stenographic record, upon application thereof and upon paying the reasonable costs thereof to be fixed by the executive director.

In any hearing convened upon proper petition of an interested party the initial burden shall be upon the state to show by preponderance of the evidence that the property in question was used in such a manner as to be declared contraband as provided in § 51–707. [Acts 1951, ch. 115, § 45 (Williams, § 5178.74); 1957, ch. 382, § 10; impl. am. Acts 1974 (Adj. S.), ch. 481, §§ 6, 7; Acts 1975, ch. 41, § 2.]

■ The statute (§ 51–707) excepts only the property of common carriers from forfeiture. The same section, however, also provides that any motor vehicle which has been finally forfeited to the state "and which has not been ordered by any court or competent authority to be returned to any claimant" shall be sold at public auction. This provision contemplates that there could be an order that the property be returned to a claimant.

The statute further provides for written notice to be given by the Executive Director of the Wildlife Resources Agency to the party from whom the property was taken and to all others who have a legal interest in the property, who are either made known or who by a reasonable examination of the public records should have been discovered. Section 51–711 provides, as follows:

In the event the ruling of the Executive Director is favorable to the claimant, the Executive Director shall deliver to the claimant the vehicle so seized.

The statutes provide a very comprehensive and elaborate claim procedure requiring notice to all who claim an interest in the seized property and a hearing with subpoena powers and court reporters. We hold, however, that as to innocent claimants of the seized property the entire procedure is meaningless. The only issue that can be determined under T.C.A. § 51–709 is whether the property seized was used in such a manner as to be declared contraband under the provisions of T.C.A. § 51–707; there is no provision which permits an innocent claimant to prevail once the property has been declared to be contraband. This aspect of T.C.A. § 51–709 is singular and at variance with other statutes of the state dealing with contraband goods. See T.C.A. § 52–1404 wherein the confiscation procedure set out in the Drug Control Act provides a method by which an innocent claimant can prevail. See also § 57–623 for similar provisions in the procedure set up for the confiscation of property under the laws relating to unstamped liquor.

■ A hearing is an integral part of any valid confiscatory statute. In *Stockton v. Morris and Pierce* (1937) 172 Tenn. 197, 110 S.W.2d 480, it was held that a statute which allowed summary confiscation of unstamped tobacco was denial of due process by failing to provide for a hearing at any stage of the procedure.

"Forfeiture of rights and property cannot be adjudged by legislative acts, and confiscation without a judicial hearing after due notice, would be void as not being due process of law." *State v. Del Rio Turnpike Co.* (1914) 131 Tenn. 600, 175 S.W. 1143, quoting from Cooley, *Constitutional Limitation* 518 (7th ed.).

Due process of law has been held to mean "a law which hears before it condemns, which proceeds on inquiry, and renders judgment only after trial." *Tennessee Central Ry. Co. v. Pharr* (1946) 183 Tenn. 658, 194 S.W.2d 486, citing 16 C.J.S. Constitutional Law § 567. A hearing must be an orderly proceeding in which the person to be affected is afforded an opportunity to defend, enforce, and protect his rights. 16 Am.Jur.2d, Constitutional Law, § 572.

The "hearing" allowed by T.C.A. § 51–709 might, by the grace of the particular hearing officer, permit an innocent claimant of the seized property to prove his innocence. The establishment of that fact, however, would have no bearing on the outcome of the hearing, because that section mandatorily sanctions the seizure of the property if the state carries the initial burden of proving that the property was used in such a manner as to be declared contraband under T.C.A. § 51–707. A hearing that is so arranged, limited and fixed by legislative enactment that the property of

innocent parties is summarily confiscated is no hearing at all.

The only decision we have found dealing with the constitutionality of T.C.A. § 51–709 is an unreported opinion by the Middle Section of this Court in *Findlay v. Davis,* filed at Nashville on July 1, 1955. The Court there held that the statute was not violative of the due process clauses of the federal and state constitutions. That lawsuit, however, dealt with a *guilty owner* who was caught hunting deer with a shotgun loaded with buckshot. We agree with the Court that the shotgun was subject to confiscation, and that the claimant, being the guilty owner of the shotgun, was not deprived of any constitutional right. Under those circumstances, when the state has carried the burden of proving that the property was used in such a manner as to be declared contraband, that is all to which the guilty owner-claimant was entitled; there was no abuse of due process. In the case at bar, however, we are dealing with an innocent lienholder who, under the statute, has no effective means of asserting its interest in the seized property.

We conclude that under the statutes the only way an order could be entered returning the seized property to any claimant, innocent or guilty, would be for the state to fail to carry the burden of proving that the property was used in such a manner as to be declared contraband under T.C.A. § 51–707. There is no other defense, and regardless of the innocence of the claimant the property can not be returned to him.

■ When applied to innocent claimants, we hold that T.C.A. § 51–709 is unconstitutional in that it violates two provisions of the Declaration of Rights of the Constitution of Tennessee, namely, Article 1, Section 8, and Article 1, Section 17. To be valid under those constitutional provisions the statute must permit a claimant the right to prove his interest in the property and his innocence of the statutory violation which resulted in the seizure. When these facts are established to the satisfaction of the hearing officer or court, the interest of the innocent claimant must be protected.

The legislature may promulgate reasonable requirements for the proving of innocence as was done in T.C.A. § 52–1404 and 57–623, but it is constitutionally required that a claimant have a hearing at which he can effectively establish his interest in the property and prove that he is innocent of the statutory violation.

## IV.

■ The chancellor, without passing on the constitutionality of the statute, apparently attempted to make an equitable disposition of the lawsuit in the light of what he perceived to be an unjust situation. We hold that an unconstitutional statute can not be given an equitable application; it must not be applied at all to the extent that it is violative of the constitution.

■ We therefore hold that, under the facts, the state had the right to seize the vehicle; the claimant Merchants Bank, being an innocent claimant, has the right to be protected to the extent of its interest in the vehicle; the extent of the claimant's interest is the sum of $2,259.50, plus interest at 6% per annum from the date the vehicle was declared to be contraband; any additional amounts realized from the sale of the vehicle is the property of Gene Edward Vest and is, under the law, contraband property forfeited to the State of Tennessee.

The decree of the chancellor is reversed, and a decree will be entered in this Court ordering the state agency to sell the vehicle at public auction, to apply the proceeds first to the payment of the claim of Merchants Bank as heretofore decreed, and the balance of the sales price, if any, is the property of the state.

The cost in this Court is adjudged against the State of Tennessee.